Billy L. JACKSON, et al., Plaintiffs–Appellants,

v.

RESOLUTION GGF OY, et al., Defendants–Appellees.

No. 97–2044.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 27, 1997.

Decided Feb. 13, 1998.

 

Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, Rick D. Young (argued), Edelman & Combs, Chicago, IL, for Plaintiffs–Appellants.

Jonathan N. Ledsky (argued), Craig A. Varga, Varga, Berger, Ledsky & Hayes, Chicago, IL, for Defendants–Appellees.

Before CUMMINGS, CUDAHY, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Harbor Financial Group specializes in loans to customers who have trouble obtaining credit elsewhere. Extra risk is worthwhile only in exchange for extra compensation, and Harbor predictably charges high interest rates, both directly through a stated annual rate of interest and indirectly by deducting "points" from the amount advanced to the borrower. Between 1989 and 1991 Harbor charged more than 3 points in Illinois for loans secured by junior mortgages on real estate, believing that 815 ILCS 205/4.1a, which limits a lender to 3 points if it charges interest at an annual rate exceeding 8%, had been repealed by an amendment to a related section of the same statute, the Illinois Interest Act. So *Currie v. Diamond Mortgage Corp.*, 859 F.2d 1538 (7th Cir.1988), holds, and it was *Currie* that emboldened Harbor to charge more than 3 points until *Fidelity Financial Services, Inc. v. Hicks*, 214 Ill. App.3d 398, 158 Ill.Dec. 221, 574 N.E.2d 15 (1st Dist.1991), held that *Currie* misunderstood state law and that the points limitation remains in force. Illinois law specifies a penalty of double the *total* interest (including points) when a lender charges excessive interest. 815 ILCS 205/6. This case, commenced in state court and removed to federal court under 28 U.S.C. § 1441(d), seeks to recover the statutory penalties from assignees and purchasers of the notes that Harbor's borrowers executed. Section 205/6 applies only to "the lender", but the defendants, some of which may be holders in due course, make nothing of this. Instead they rely on the second paragraph of §205/6, which reads:

No person shall be liable under this Act for any act done or omitted in good faith in conformity with any rule, regulation, inter-

pretation, or opinion issued by the Commissioner of Banks and Real Estate or the Department of Financial Institutions or any other department or agency of the State, notwithstanding that after such act or omission has occurred, such rule, regulation, interpretation, or opinion is amended, rescinded, or determined by judicial or other authority to be invalid for any reason.

In February 1989 the Legal Counsel of the state's Department of Financial Institutions signed a letter stating in part:

It is the Department's position that the Currie Court [sic] clearly held that the 1981 amendments to Section 4(1)(L) (Par. 6404(1)(L) of the Statute [now § 205/4(1)(*l*)] provide that it is lawful to charge any rate of interest or compensation on loans secured by a mortgage on real estate. This amendment is so clearly inconsistent with the points limitation in Section 4.1a of the Statute that such limitation is necessarily repealed. Under these circumstances, the licensee [i.e., the lender] is no longer bound by the points limitation in Section 4.1a.

Interpreting an earlier version of § 205/6's second paragraph, the district judge granted summary judgment to the defendants using reasoning that we need not recount, because all parties to the litigation agree that the current version, which took effect in July 1997, is fully retroactive. The question presented, therefore, is whether the Legal Counsel's 1989 opinion letter gives defendants a safe harbor under the 1997 version of § 205/6. Before turning to that question, however, we take up a number of jurisdictional questions.

■ First, there is the question what this case is doing in federal court. Complete diversity of citizenship has not been established, and none of the plaintiffs' claims exceeds $75,000 in value. Section 1441(d) permits a "foreign state as defined in section 1603(a) of this title" to remove a "civil action" brought against it. Defendant Resolution GGF Oy, an entity established and owned by the Government Guarantee Fund of Finland, fits the definition of a "foreign state" and removed the action. *In re Air Crash Disas-*

*ter Near Roselawn, Indiana*, 96 F.3d 932, 942 (7th Cir.1996), holds that a foreign state's removal transfers to federal court the entire "civil action"—even though the claims against the defendants are distinct, and it would not jeopardize any interest of the foreign entity if the remaining claims were resolved in state court. See also *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983). Subject-matter jurisdiction therefore has been established.

■ Second, there is a question what Norwest Financial Illinois, Inc., one of the defendants, is doing in any court. Norwest bought some of Harbor's paper but does not hold the notes signed by any of the plaintiffs, and it asked the court to dismiss it from the case on the ground that none of the plaintiffs had standing to pursue a claim against it. The district judge did not act on this motion. Like any other jurisdictional issue, this subject should have received priority consideration. Norwest's position is impeccable. Some other borrowers may have claims against it, but none of these plaintiffs does— and as the case was not certified as a class action, the only claims before the court are those of the plaintiffs personally. We need not decide whether Norwest would have been a proper defendant had a class been certified even though none of the representative plaintiffs held a legal claim against it. There is no case or controversy between Norwest and any of the named plaintiffs, so Norwest must be dismissed as a party. *Warth v. Seldin*, 422 U.S. 490, 502, 95 S.Ct. 2197, 2207, 45 L.Ed.2d 343 (1975).

■ Third, there is a question whether any relief is available against Resolution GGF Oy, which maintains that as a "foreign state" it is immune to financial penalties. Again this is a subject that the district court should have addressed before taking up the merits. See *Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993); *Segni v. Commercial Office of Spain*, 816 F.2d 344, 346–47 (7th Cir.1987). Resolution GGF Oy relies on *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), which held that municipalities

cannot be required to pay punitive damages for constitutional torts under 42 U.S.C.§ 1983. What this has to do with statutory penalties for violations of laws that regulate commercial transactions is a mystery. Under § 4(a) of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1606:

> As to any claim for relief with respect to which a foreign state is not entitled to immunity under section 1605 or 1607 of this chapter, the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances; but a foreign state except for an agency or instrumentality thereof shall not be liable for punitive damages; if, however, in any case wherein death was caused, the law of the place where the action or omission occurred provides, or has been construed to provide, for damages only punitive in nature, the foreign state shall be liable for actual or compensatory damages measured by the pecuniary injuries resulting from such death which were incurred by the persons for whose benefit the action was brought.

Resolution GGF Oy is not entitled to immunity because it participates in commerce within the United States. 28 U.S.C. § 1605(a)(2). It acquired the assets of Union Mortgage Company in 1992, after the transactions that gave rise to this litigation, and in the process acquired any liabilities attached to Union Mortgage's assets. Because Resolution GGF Oy is "an agency or instrumentality" of Finland rather than the Finnish State itself, see 28 U.S.C. § 1603(b), it is exposed to punitive damages too. So even if the penalties under § 205/6 should be understood as "punitive damages"—although that term usually refers to a common law remedy rather than to a statutory penalty such as treble damages under the antitrust laws—Resolution GGF Oy still would be treated just like any other lender or buyer of commercial paper. Cf. *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994); *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979).

Thus we arrive at the principal question: whether charging more than 3 points on loans made after the Legal Counsel's letter, and before *Fidelity Financial Services*, was "in conformity with any rule, regulation, interpretation, or opinion issued by ... the Department of Financial Institutions". The letter is not a "rule" or "regulation" because it was not published for comment or included with the state's body of administrative rules, *see Riverboat Development Corp. v. Illinois Gaming Board*, 268 Ill.App.3d 257, 205 Ill. Dec. 794, 644 N.E.2d 10 (1st Dist.1994), but is an "interpretation" of the Illinois Interest Act—and this is the principal way in which the current version of § 205/6 departs from the former one, which limited the safe harbor to reliance on a "rule or regulation or interpretation *thereof*" (emphasis added). Under the revised law, an administrative interpretation of the Illinois Interest Act offers as much shelter as an administrative interpretation of a rule or regulation.

Section 205/6 resembles 15 U.S.C. §1640(f), which allows the Federal Reserve Board to create safe harbors, but there is a potentially important difference: although §1640(f) extends protection to a person who relies on an "interpretation or approval by an official or employee of the Federal Reserve System duly authorized by the Board to issue such interpretations or approvals", § 205/6 is limited to interpretations and other acts "by ... the Department of Financial Institutions". Does the Legal Counsel's letter fit that description? No one would suppose that a letter from a junior attorney established an interpretation by the Department itself just because it appeared on the Department's letterhead. What then of a letter by the Department's chief lawyer? A statute attaching consequences to a decision of "the Governor" surely refers to a decision of the Governor personally (at least one to which the Governor has lent his name), not of the Governor's lawyer—though perhaps st .aw would allow the Governor to delegate some decisions. We held in *Chicago Board of Trade v. SEC*, 883 F.2d 525, 529–30 (7th Cir.1989), that a letter from the Director of the SEC's Division of Market Regulation did not have the same effect as a decision of the SEC itself, and *Ives v. W.T. Grant Co.*, 522 F.2d 749, 758 (2d Cir.1975), held that a prior version of §1640(f) that did not mention the possibility of staff interpretations was limited to acts

bearing the formal imprimatur of the Federal Reserve Board. See also *Jones v. Community Loan & Investment Corp.*, 544 F.2d 1228, 1232 (5th Cir.1976). But the allocation of authority within a federal agency may differ from the allocation within the Illinois Department of Financial Institutions. Perhaps chief legal officers in Illinois presumptively are authorized to interpret laws on behalf of their agencies. Perhaps, too, the head of the Department has delegated to its Legal Counsel authority to speak for the Department on legal issues.

Strangely the parties have been silent on these questions. The record does not reveal whether the Legal Counsel was exercising delegated authority, and the parties have not presented any statutes or cases discussing the permissible scope of delegation under Illinois law. The omission cannot be ascribed to differences between old and new versions of § 205/6. Both versions speak of action "by ... the Department of Financial Institutions". The district court assumed that the Legal Counsel's letter was issued "by ... the Department of Financial Institutions", and although plaintiffs refer to cases such as *Ives* and *Jones* that deal with the distribution of powers within the Federal Reserve Board and the interpretation of the former version of § 1640(f), these cases deal with advice by junior staff members rather than the chief legal officer. Plaintiffs do not tell us how Illinois treats the acts of agency general counsels (with or without express delegation from the agency) in agencies as small as the Department of Financial Institutions. The head of the Department's Consumer Credit Division stated in an affidavit that the Legal Counsel's letter represented the "interpretation of the Department at that time" (that is, 1989), which implies that the head of the Department approved the letter, but the record does not reveal whether this understanding is correct. We conclude that all potential objections to the status of the Legal Counsel's letter as an act "by ... the Department of Financial Institutions" have been forfeited.

Plaintiffs' remaining position—that Harbor Financial did not rely "in good faith" on the Legal Counsel's letter—is not supported by the record. Harbor's President testified by deposition that until Harbor received the letter it did not charge more than 3 points on loans secured by junior mortgages. The district judge remarked: "Plaintiffs have produced no evidence that would show that [Harbor's] decision was not based upon the 1989 opinion letter and that the decision was not made in good faith." It is awfully hard to see how a business decision supported by an opinion of this court and fortified by a letter from the top lawyer at the state agency regulating the subject could be other than in "good faith". Demanding more than this record discloses on that subject would undermine the ability of the Department to offer safe harbor to persons who rely on its rules or interpretations, and so destroy the function of § 205/6.

AFFIRMED.