**Edward and Pamela REISER, and Janet Greenlee, Plaintiffs–Appellees,**

v.

**RESIDENTIAL FUNDING CORPORATION, Defendant–Appellant.**

No. 04–8017.

United States Court of Appeals, Seventh Circuit.

Submitted Aug. 6, 2004.

Decided Aug. 19, 2004.

Donna M. Doblick, Reed Smith, Pittsburgh, PA, for Petitioner.

Eric G. Calhoun, Lawson, Fields, McCue & Campbell, Addison, TX, for Respondents.

Before BAUER, EASTERBROOK, and MANION, Circuit Judges.

EASTERBROOK, Circuit Judge.

After denying a motion to dismiss the complaint under Fed.R.Civ.P. 12(b)(6), the district court certified its order for interlocutory appeal under 28 U.S.C. § 1292(b). Defendant has filed the necessary petition, which we grant in part and summarily reverse so that the remainder of the suit may proceed without delay.

Plaintiffs, who secured second mortgages from Mortgage Capital Resources Corp., contend in this suit that the lender violated two federal statutes (the Truth in Lending Act and the Real Estate Settlement Procedures Act) plus the Illinois Interest Act. The federal claims assert that Mortgage Capital charged excessive closing fees and engaged in forbidden fee splitting. The state claim is that by charging more than three points at closing Mortgage Capital exceeded a limit set by 815 ILCS 205/4.1a. Neither Mortgage Capital nor any other participant in the extensions of credit has been named as a defendant; instead plaintiffs seek relief from Residential Funding Corporation, which purchased the plaintiffs' notes as part of larger pools. Normally the holder-in-due-course doctrine would foreclose litigation against the purchaser, but a portion of the

Home Ownership and Equity Protection Act overrides this doctrine for high-interest mortgage loans, providing that a person "who purchases or is otherwise assigned a mortgage referred to in [15 U.S.C. § 1602(aa)] shall be subject to all claims and defenses with respect to that mortgage that the consumer could assert against the creditor of the mortgage". 15 U.S.C. § 1641(d)(1). The complaint alleges, and Residential Funding does not deny, that the loans are high-interest mortgages covered by § 1602(aa).

■ Residential Funding contends that the complaint does not state a claim under Illinois law because 815 ILCS 205/4.1a was repealed in 1981 by another statute lifting the cap on mortgage interest rates. We agreed with this position in *Currie v. Diamond Mortgage Corp.*, 859 F.2d 1538, 1542–43 (7th Cir.1988), holding that it would be so odd to limit points, when straight interest rates are unlimited, that Illinois must be understood to have repealed the points cap implicitly. Both the Attorney General of Illinois and the agency that regulates banking under Illinois law have issued advisory opinions to the same effect. But in this case the district judge refused to follow *Currie*. The judge wrote that he found two decisions by one of the state's five intermediate appellate courts more persuasive than *Currie* and elected to follow them instead. See *U.S. Bank N.A. v. Clark*, 348 Ill.App.3d 856, 283 Ill.Dec. 268, 807 N.E.2d 1109 (2004); *Fidelity Financial Services, Inc. v. Hicks*, 214 Ill.App.3d 398, 158 Ill.Dec. 221, 574 N.E.2d 15 (1991). Recognizing that other district judges in this circuit continue to enforce *Currie*, and that many suits similar to this one are pending elsewhere, the district judge sensibly concluded that a prompt decision under § 1292(b) could accelerate the disposition of many pieces of litigation. We agree with that conclusion and therefore grant the petition for permission to appeal.

■ By treating *Currie* as having no more than persuasive force, the district court made a fundamental error. In a hierarchical system, decisions of a superior court are authoritative on inferior courts. Just as the court of appeals must follow decisions of the Supreme Court whether or not we agree with them, see *State Oil Co. v. Khan*, 522 U.S. 3, 20, 118 S.Ct. 275, 139 L.Ed.2d 199 (1997); *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989), so district judges must follow the decisions of this court whether or not they agree. *See United States v. Ramsey*, 785 F.2d 184 (7th Cir.1986). A decision by a state's supreme court terminates the authoritative force of our decisions interpreting state law, for under *Erie* our task in diversity litigation is to predict what the state's highest court will do. Once the state's highest court acts, the need for prediction is past. But decisions of intermediate state courts lack similar force; they, too, are just prognostications. They could in principle persuade us to reconsider and overrule our precedent; assuredly they do not themselves liberate district judges from the force of our decisions.

We see little point in reexamining *Currie*. It represents an educated guess about how the Supreme Court of Illinois will rule. Instead of guessing over and over, it is best to stick with one assessment until the state's supreme court, which alone can *end* the guessing game, does so. Illinois has an internal division on this issue, with two judicial decisions set against the views of two executive officials. The state must resolve this conflict internally; restlessness at the federal level serves no useful purpose. This is not to say that decisions of intermediate state courts *never* could induce us to look afresh at issues of state law; a decision demonstrating that our initial resolution rested

on some obvious error would do the trick. *Clark* and *Hicks* do not show this, however. They give more weight than *Currie* to the principle that repeals by implication are disfavored, but the canon is not something that *Currie* overlooked; our opinion discussed its significance. *Clark* also thought it significant that § 4.1a was reenacted in 1992. But this occurred as part of a general recodification, a process that is not supposed to cause substantive change. Inclusion of both conflicting statutes in the project does not change their relative weight.

■ *Clark* said, and plaintiffs also contend, that *Currie* was dictum. That's wrong. *Currie* contains two holdings: that § 4.1a has been repealed by implication, and that it was preempted by federal regulations applicable to the lender in that suit. There is a big difference between dicta and alternative holdings. Plaintiffs make an additional argument: that *Currie* has been overruled by *Jackson v. Resolution GGF Oy*, 136 F.3d 1130 (7th Cir.1998). That's wrong too. The lender in *Jackson* relied on an opinion, issued by the Legal Counsel of the state's Department of Financial Institutions, that had followed *Currie*. We held that reliance on such an opinion prevents relief against a lender. Doubtless the lender could have relied on *Currie* directly, but we take litigation as the parties present it; defendant in *Jackson* wanted a resolution that would protect it even if the Supreme Court of Illinois ultimately disagrees with our decision in *Currie*. We held that the lender was entitled to that protection. Nothing in *Jackson* suggests dissatisfaction with, let alone overrules, the holding of *Currie*. And, for the reasons already given, it is not prudent for a federal appellate court to revisit an issue of state law that the state's supreme court has left unresolved.

■ As for the claims based on federal law: Residential Funding contends that they are untimely under the one-year periods of limitations contained in both the TILA and the RESPA. The loans were made in 1999 and the suit was not filed until 2003, but the district judge concluded that plaintiffs may be able to demonstrate that the acts of Mortgage Capital justify either equitable tolling or equitable estoppel. See *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446 (7th Cir.1990). Residential Funding insists that the period of limitations is a personal defense and hence is unaffected by 15 U.S.C. § 1641(d)(1). Whether the sins of a lender may be used to extend the period available to sue a holder in due course is a question that eventually may require resolution, but it is too soon to tackle the issue. All we have to go on is the complaint, and because the period of limitations is an affirmative defense it is rarely a good reason to dismiss under Rule 12(b)(6). See, e.g., *Xechem, Inc. v. Bristol–Myers Squibb Co.*, 372 F.3d 899 (7th Cir.2004) (collecting authority). Maybe Residential Funding has itself done something that warrants tolling. Maybe plaintiffs will be unable to prove that Mortgage Capital's acts justify tolling or estoppel. Only if plaintiffs can demonstrate justification for delay in suing Mortgage Capital, but cannot demonstrate an equivalent justification for delay in suing Residential Funding, does the effect of § 1641(d)(1) matter. It is best to await a final decision rather than leap into a subject that evidence may cast in a new light.

The petition for leave to appeal is granted, limited to the claim under the Illinois Interest Act. With respect to that subject the decision is reversed, and the case is remanded with instructions to dismiss the complaint to the extent it relies on 815 ILCS 205/4.1a. The petition for leave to appeal otherwise is denied.