In re Inez EPHRAIM, Debtor.

Inez Ephraim, Plaintiff,

v.

Provident Bank, Defendant.

Bankruptcy No. 03 B 35580.
Adversary No. 03 A 04598.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Sept. 14, 2004.

Nora E. Zuckerman, David S. Yen, Legal Assistance Foundation of Metropolitan Chicago, Chicago, IL, for Plaintiff.

Ronald O. Roeser, Roeser & Vucha, Elgin, IL, for Defendant.

### MEMORANDUM OPINION

SUSAN PIERSON SONDERBY,
Bankruptcy Judge.

This matter comes to be heard on the Defendant's Motion to Dismiss Adversary Complaint. For the reasons stated herein, the motion is granted.

### I. JURISDICTION AND VENUE

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Moreover, the court has continuing jurisdiction over this post-confirmation proceeding because the potential recovery on the subject cause of action can be distributed to creditors under the confirmed chapter 13 plan. *See, In re Smith,* 280 B.R. 436, 440–441 (Bankr. N.D.Ill.2002). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (K). Venue is proper in this court pursuant to 28 U.S.C. § 1409(a).

### II. BACKGROUND

Because this matter comes to be heard on a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable herein by Federal Bankruptcy Rule 7012, unless otherwise indicated, the following well-plead facts from the Complaint are taken as true.

On August 28, 2003 (the "Petition Date"), Inez Ephraim, a resident of Chicago (the "Debtor"), filed a petition under chapter 13 of title 11 of the United States Code (the "Bankruptcy Code").

In 1972, the Debtor purchased her current residence for $24,000. The loan was secured by a mortgage insured by the FHA (the "FHA Mortgage"). On October 30, 1997, when the FHA Mortgage was still a recorded encumbrance on the property, the Debtor obtained a loan from Freedom Mortgage Corporation ("Freedom") in the original principal amount of $20,000 with an interest rate of 12.34% and a "balloon rider" (the "Note").[1] To secure the payment of the Freedom Note, the Debtor executed a mortgage in favor of Freedom, which was recorded against the property as junior to the FHA Mortgage (the "Mortgage"). Freedom's Note and Mortgage were assigned to Provident Bank, the plaintiff herein, on November 19, 1997.

The Debtor was charged with $1,335 in fees, consisting of a $440 loan origination fee, a $300 application process fee, a $200 document preparation fee, and a $395 underwriting fee (the "Loan Fees"), in connection with the closing on the Note and Mortgage. The total amount of the Loan Fees equals 6.67% of the principal amount of the Freedom Note. The loan origination fee and application process fees were paid to Midwest Express Mortgage Co. and Freedom received the underwriting fee and document preparation fee.

The Note is an "alternative mortgage transaction" and Provident Bank is a "state chartered housing creditor" within the meaning of the provisions of the Alternative Mortgage Transaction Parity Act. 12 U.S.C. § 3801 *et seq.* (the "Parity Act")[2]

---

1. A balloon rider is a clause attached to a mortgage contract which, in this case, makes the entire unpaid balance of the mortgage, and any unpaid interest, due in 15 years. However, this amount is frequently rolled back into a mortgage with the interest rate adjusted in light of market rates at that time.

2. Specifically 12 U.S.C. § 3802(1)(B) since the amortization schedule is at the 30–year rate but the balloon rider makes the loan payable in 15 years. *Motion to Dismiss Adversary Complaint* at 2.

According to the case docket, on February 5, 2004, the court entered an order confirming the Debtor's chapter 13 plan of reorganization (the "Plan"). On December 8, 2003, the Debtor filed a one-count complaint against Provident commencing this adversary proceeding (the "Complaint"). The Complaint, although it is one count, really seeks a variety of alternative relief. In the Preliminary Statement in the Complaint, the Debtor asserts that the Complaint is being brought "pursuant to 11 U.S.C. § 502, to object to the secured claim of Defendant Provident Bank." In the prayer for relief at the conclusion of the Complaint, however, the Debtor seeks: (i) the entry of a judgment in her favor and against Provident in the amount of $110,469.40, (ii) the offset of the damages awarded to her against the Note, (iii) the release of the Mortgage, (iv) the disallowance of Provident's claim against the estate, and (v) such "other, further and different relief as may be just and proper."

■ The gist of the Complaint is the Debtor's contention that the amount of the Loan Fees charged in connection with the note are in excess of the amounts allowed to be collected by lenders for such fees under the Illinois Interest Act, 815 ILCS 205/1, *et seq.* (the "Act"). According to the Debtor, the violation of the Act gives rise to a cause of action thereunder for monetary damages. If successful on that cause of action, the judgment in the Debtor's favor—as calculated in accordance with the provisions of the Act—will exceed the current amount of the Note. Consequently, the Note will be paid off and will no longer provide a basis for Provident's claim, necessitating the release of the Mortgage. So, the Preliminary Statement in the Complaint grounding the complaint on section 502 disallowance is not entirely accurate. That does not, however, doom the Complaint, as all a plaintiff need do in its pleading is include enough allegations to allow the court and the defendant to understand the gravamen of the complaint. *McCormick v. City of Chicago,* 230 F.3d 319, 325 (7th Cir.2000), *Thompson v. Illinois Dept. of Professional Regulation,* 300 F.3d 750, 755 (7th Cir.2002)(the complaint must simply "give the defendant notice of the claims and the grounds they rest upon."). Indeed, the specific legal theory need not be spelled out. *Bartholet v. Reishauer A.G. (Zurich),* 953 F.2d 1073, 1078 (7th Cir.1992).

On March 17, 2004, Provident Bank brought a motion to dismiss the Complaint pursuant to Rule 12(b)(6) raising two alternative arguments to defeat the complaint at the pleading stage. First, Provident Bank contends that the provision of the Act upon which the Debtor relies has been repealed, albeit impliedly so, by subsequent legislation. Second, if the provision was not repealed, it is nonetheless inapplicable because the entire Act is preempted by the Parity Act.

## III. DISCUSSION

### A. Standards for 12(b)(6) Motions to Dismiss

■ A complaint may not be dismissed under Rule 12(b)(6) unless no relief may be granted under any set of facts that could be proved consistent with the allegations in the complaint. *Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 515, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), *Walker v. National Recovery, Inc.* 200 F.3d 500, 503 (7th Cir.1999). In ruling on the motion, the court must accept as true all facts alleged in the complaint, and it draws all reasonable inferences from those facts in favor of the plaintiff. *Jackson v. E.J. Brach Corp.,* 176 F.3d 971, 977–78 (7th Cir.1999); *Zemke v. City of Chicago,* 100 F.3d 511, 513 (7th Cir.1996).

The specific legal theory need not be spelled out in the complaint. *Bartholet,* 953 F.2d at 1078. Rather, a court should ask whether relief is possible under any set of facts that could be established consistent with the allegations. *Id.* The court is not, however, compelled to accept conclusory allegations regarding the legal effect of facts set out in the complaint. *Reed v. City of Chicago,* 77 F.3d 1049, 1051 (7th Cir.1996). When reviewing a Rule 12(b)(6) motion, the court may only review the complaint, exhibits attached to the complaint, and supporting briefs. *Thompson,* 300 F.3d at 753; *Beam v. IPCO Corp.,* 838 F.2d 242, 245 (7th Cir.1988).

As noted earlier, the Debtor contends that the amount of the Loan Fees violates section 4.1(a) of the Act, giving rise to a cause of action for damages and a mandatory setoff of Provident's claim. Provident argues that section 4.1(a) was repealed and, if not, is preempted by the provisions of the Parity Act.

### B. *Has Section 4.1(a) of the Illinois Interest Act been repealed?*

Section 4.1(a) of the Illinois Interest Act, which addresses charges for items paid or incurred in connection with loans, provides, in pertinent part,

Where there is a charge in addition to the stated rate of interest payable directly or indirectly by the borrower and imposed directly or indirectly by the lender as a consideration for the loan, ... whether denominated 'points,' 'service charge,' 'discount,' 'commission,' or otherwise, ... the rate of interest shall be calculated in the following manner: The percentage of the principal amount of the loan represented by all of such charges shall first be computed, which in the case of a loan with an interest rate in excess of 8% per annum secured by residential real estate, other than loans described in paragraphs (e) and (f) of Section 4, shall not exceed 3% of such principal amount.

815 ILCS 205/4.1a.

The penalty provision of the Illinois Interest Act provides, *inter alia,*

If any person or corporation knowingly contracts for or receives, directly or indirectly, by any device, subterfuge or other means, unlawful interest, discount or charges for or in connection with any loan of money, the obligor may, recover by means of an action or defense an amount equal to twice the total of all interest, discount and charges determined by the loan contract or paid by the obligation, whoever is greater, plus such reasonable attorney's fees and court costs as may be assessed by court against that lender. The payments due and to become due including all interest, discount and charges included therein under the terms of the loan contract, shall be reduced by the amount which the obligor is thus entitled to recover.

815 ILCS 205/6.

The above-quoted provisions are fairly clear—generally speaking, if a bank charges more than a certain percentage in loan charges, the loan obligor can recover damages, which *shall* be used to offset the underlying loan obligation. However, the language of section 4.1(a) is at odds with other language in the same section of that Act. Specifically, section 4 provides, in pertinent part,

It is lawful to charge, contract for, and receive *any amount of* interest or *compensation* with respect to the following transactions:

...

(*l*) Loans secured by a mortgage on real estate.

815 ILCS 205/4(*l*) (emphasis supplied).

So, while section 4.1(a) sets limits on the amount of compensation (in the form of

points or charges) that can be collected, section 4 authorizes *any* amount of compensation the mortgage lender can collect in connection with a real estate loan transaction. Because the Illinois legislature did not expressly repeal section 4.1(a), however, an argument is often raised, as Defendant does here, that given the inconsistent language of the two provisions, section 4.1(a) was impliedly repealed by section 4.

There is currently a divide between federal courts and at least two Illinois appellate level courts as to whether section 4.1(a) was repealed, *vel non.* In deciding the issue, this court found it instructive to examine the chronology of this split in authority, which follows.

In 1981, sections 4 and 4.1(a) of the Act were in place. In that year, subsection (*l*) of section 4 was amended to provide, as quoted above, that it is lawful to charge and receive any amount of compensation.

According to the Seventh Circuit, the 1981 amendment to section 4(*l*) impliedly repealed section 4.1. *Currie v. Diamond Mortgage Corp. v. Illinois,* 859 F.2d 1538, 1542–43 (7th Cir.1988). In reaching its conclusion, the Court noted that "the language and purpose of section 4.1 are clearly contrary to [those of] section 4," and the language of the two competing provisions is "irreconcilable." *Id.* at 1543. The dissonance of the language and the purposes of the provisions convinced the Court that the failure to repeal section 4.1(a) was attributable to "an oversight of the legislature." *Id.*

Approximately four months after the issuance of *Currie,* the Illinois Department of Financial Institution's Legal Counsel issued an "opinion letter" dated February 28, 1989, stating in part:

> It is the Department's position that the Currie Court [sic] clearly held that the 1981 amendments to Section 4(1)(L) (Par. 6404(1)(L)) of the Statute [now

§ 205/4(1)(*l* )] provide that it is lawful to charge any rate of interest or compensation on loans secured by a mortgage on real estate. This amendment is so clearly inconsistent with the points limitation in Section 4.1a of the Statute that such limitation is necessarily repealed. Under these circumstances, the licensee [i.e., the lender] is no longer bound by the points limitation in Section 4.1a.

*Jackson v. Resolution GGF Oy,* 136 F.3d 1130, 1132 (7th Cir.1998).

Subsequent to the opinion letter, the language of section 4.1a, including subsection (f) of that section which deals with points limitation, was amended, effective January 1, 1992 (the "1992 Amendment"). As alluded to by the Illinois court in *U.S. Bank National v. Clark,* 348 Ill.App.3d 856, 283 Ill.Dec. 268, 807 N.E.2d 1109, 1117 (2004), the important aspect of the 1992 Amendment is that 4.1a(f) was repeated literally (*i.e.,* verbatim), or substantively (*i.e.* its meaning was preserved). As discussed later, this characterization of the 1992 Amendment is important to whether the statute was re-enacted or merely continued, and bears on whether the legislature intended to dispel concerns regarding section 4.1a's continued viability.

Four years after *Currie,* an Illinois appellate court weighed in on the issue, holding contrary to *Currie,* that section 4.1a was *not* repealed by implication. *Fidelity Financial Services v. Hicks,* 214 Ill.App.3d 398, 158 Ill.Dec. 221, 574 N.E.2d 15 (1991). The court essentially harmonized the two contradictory sections, finding that they operated in conjunction with each other to "[limit] ancillary charges in connection with loans, [in order to assure] that costs passed to borrowers accurately reflected the cost of money, assuring a more competitive market while limiting the potential for abuse." *Id.* at 404, 158 Ill.Dec. 221,

574 N.E.2d 15. The court also observed that section 4.1a remains on the books "12 years after its ostensible repeal." *Id.* at 403, 158 Ill.Dec. 221, 574 N.E.2d 15. Accordingly, the court "[declined] to repeal section 4.1a by implication." *Id.* at 404, 158 Ill.Dec. 221, 574 N.E.2d 15.

In January 1998, the Illinois Office of Banks and Real Estate issued an "Interpretative Letter," which agreed with *Currie. See, Krone v. 125 Home Owner Loan Trust,* 2003 U.S.Dist. LEXIS 25590 at *9 (S.D.Ill.2003).

One month later in *Jackson,* 136 F.3d at 1132, the Seventh Circuit observed the contrary holdings of its *Currie* opinion and the Illinois appellate court's *Hicks* opinion. Although the Seventh Circuit acknowledged the differing opinions, it did not resolve the issue and certainly did not expressly overrule *Currie.*[3]

The issue resurfaced again in 2003 in a case pending before Judge Michael J. Reagan of the Southern District of Illinois. At the time of his decision, as is true now, the Illinois Supreme Court had not opined on the repeal by implication argument. Judge Reagan, relying on the principle that the opinions of intermediate State appellate courts are not binding, declined to follow *Hicks* and adopted the reasoning of *Currie. Krone,* 2003 U.S.Dist. LEXIS 25590 at *13 (*citing Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). After carefully weighing the past case law and exercising the court's duties under the *Erie* doctrine, Judge Reagan concluded that section 4.1a(f) was repealed and dismissed a complaint based thereon with prejudice. *Id.*

Judge Amy St. Eve in this District also dismissed a cause of action based on 4.1a(f) with prejudice for the same reason. *Spann v. Community Bank of Northern Virginia,* 2004 WL 691785, *10 (N.D.Ill. Mar.30, 2004). She noted that because of the "clear inconsistencies between the plain language of the 1981 amendments to section 4 of the General Interest Statute and the language of section 4.1a of the Act," she could not "agree with the holding in *Hicks* and instead [chose to] follow the Seventh Circuit's holding in *Currie." Id.* at *10.

The next day, on March 31, 2004, the Illinois appellate court again ruled that section 4.1a was not repealed. *Clark,* 283 Ill.Dec. 268, 807 N.E.2d at 1118. The court based its decision on its interpretation of the legislature's intent by finding that the 1992 Amendment was a re-enactment of the statute as opposed to a continuation.

To explain the distinction, according to Illinois statute, if the legislature repeats a statute that is literally or substantively similar to the previous version of the statute, that statute is considered "continued." 5 ILCS 70/2. If on the other hand, the new statute is not literally or substantively similar, it is said to have been "re-enacted." The distinction between continued and re-enacted is important here because a re-enacted section 4.1a would mean that it is still "alive" and thus dispel the tension between *Currie* and *Hicks.*

The *Clark* court found that the language of section 4.1a was in fact reiterated in the

---

**3.** The court notes that within a day of finalizing this opinion, the Seventh Circuit issued *Reiser v. Residential Funding Corp.,* 380 F.3d 1027 (7th Cir.2004). The conclusion reached by this court is consistent with *Reiser.* In *Reiser,* the Court held, in reversing a District Court's denial of a motion to dismiss, that section 4.1a was implicitly repealed, the 1992 Amendment did not affect the Court's conclusion and that *Jackson* did not overrule *Currie.* The Court also rejected the argument that *Currie* was dictum.

1992 Amendment.[4] Ordinarily, according to 5 ILCS 70/2, that reiteration would mean that the statute is continued, not reenacted. *Clark,* however, relied on an exception to that ordinary rule found in the Illinois Supreme Court case of *Davis v. City of Chicago,* 59 Ill.2d 439, 322 N.E.2d 29 (1974). Relying on *Davis,* the *Clark* court held that because of the 1992 Amendment, the legislature intended to reenact section 4.1a, so it continues to be effective.

While there may be some merit to the *Hicks* court's assessment that section 4.1a's limitations on points could be interpreted as in harmony with section 4's provisions, there are no Illinois Supreme Court decisions on the issue and the Seventh Circuit, which binds this court, has ruled otherwise. Moreover, this court agrees with Judge Reagan's assessment that if it were to rule, the Illinois Supreme Court would conclude that the section 4.1a was implicitly repealed.

### IV. CONCLUSION

Given the above, this court follows the holdings of *Currie, Krone* and *Spann,* and concludes that section 4.1a of the Illinois Interest Act has been repealed by section 4 of the same Act. Therefore, this Complaint, predicated on section 4.1a alone, cannot stand. Moreover, section 4 provides no basis for relief under any hypothetical set of facts that could be proved consistent with the allegations in the Complaint. Indeed, it explicitly allows the lender to charge or receive any rate or compensation on a loan secured by a mortgage on real estate. Having concluded that section 4.1a is repealed, there is no need to address the issue of whether it was preempted by the Parity Act. The court will enter a separate order granting the Defendant's motion to dismiss.

**4.** It is unclear from the opinion whether the amendment was literal or substantive.