Vadis CURRIE, Gregory Dollison and Brenda Seay, individually and on behalf of a class, Plaintiffs–Appellants,

v.

DIAMOND MORTGAGE CORPORATION OF ILLINOIS, et al., Defendants–Appellees.

No. 88–1182.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 16, 1988.
Decided Oct. 19, 1988.

Ralph W. Miller, Jr., Oak Brook, Ill., for plaintiffs-appellants.

Ronald R. Peterson, Jenner & Block, Chicago, Ill., for defendants-appellees.

Before CUMMINGS, POSNER and MANION, Circuit Judges.

CUMMINGS, Circuit Judge.

Plaintiffs commenced this action in the Bankruptcy Court for the Northern District of Illinois alleging that defendant Diamond Mortgage Corporation of Illinois ("Diamond") had violated Section 4.1a of the Illinois General Interest Statute ("GIS"), Ill.Rev.Stat. (1985), ch. 17, ¶ 6406, which prohibits lenders from imposing specified charges in excess of 3% of the loan principal on residential mortgages bearing an interest rate in excess of 8% per annum. On Diamond's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim, the bankruptcy court dismissed the action, relying on two independent grounds: (1) Section 4.1a of the GIS had been preempted by Section 501 of the Depository Institutions Deregulation and Monetary Control Act of 1980 ("DIDMCA"), 12 U.S.C. § 1735f–7 note, and (2) Section 4.1a of the GIS had been implicitly repealed by the 1981 amendments to Section 4 of the GIS, Ill.Rev.Stat. (1985), ch. 17, ¶ 6404(1)($l$). The district court affirmed the dismissal by the bankruptcy court on the basis of federal preemption, declining to reach the second issue of implicit repeal. 83 B.R. 536. We affirm.

## I

### JURISDICTION

■ Although the named plaintiffs have sought to bring this suit as a class action, the bankruptcy and district courts did not rule on the certification of the class. Prior to oral argument, plaintiffs filed a motion asking this Court to determine whether it has jurisdiction to hear this appeal on the merits from the district court without a ruling below on class certification. We conclude that the district court's dismissal of plaintiff's action without reaching the certification issue is final as required under 28 U.S.C. § 1291 and may properly be reviewed by this Court. *Gomez v. Illinois State Board of Education*, 811 F.2d 1030, 1034 n. 1 (7th Cir.1987); *Clift v. United Auto Workers*, 818 F.2d 623, 626 (7th Cir. 1987).

This case is distinguishable from the facts in *Glidden v. Chromalloy American Corp.*, 808 F.2d 621 (7th Cir.1986), and *Bieneman v. City of Chicago*, 838 F.2d 962 (7th Cir.1988), wherein each of the district courts had reserved the question of class certification for resolution after an appeal on the merits. "The district court in *Glidden* granted judgment for defendants while reserving decision on the request to certify a class. The judge indicated that he would turn to this subject after completion of the appeal on the merits. This reservation, we concluded, meant that the case was not over in the district court, making appeal impossible." *Bieneman*, 838 F.2d at 963. In *Glidden* and *Bieneman* the judgments of the district courts were not final since the courts had identified the issue of class certification to be addressed after an appeal on the merits.

Here, however, the district court has completed its review of the case and dismissed the action, enabling review by this Court. "[W]hen the court overlooks the class allegation, a judgment dealing with the representative's claim alone is final because the district court has done everything it plans to do." *Bieneman*, 838 F.2d at 963.

## II

### FACTS

Diamond is presently a Chapter 11 debtor in proceedings pending in the Bankruptcy Court for the Northern District of Illinois. Diamond previously engaged in the business of extending loans on residential real estate secured by mortgages on the borrowers' residences. In 1986, plaintiffs acquired a loan from Diamond in the amount of $46,500 bearing an interest rate of 15.5% per annum which was secured by a mortgage on their residence. In order to acquire the loan, they were required to pay to Diamond a "net loan origination fee" in the amount of $7,415, equivalent to approximately 16% of the principal amount of the loan. The net loan origination fee was deducted from the cash disbursed to them by Diamond.

## III

### ANALYSIS

#### A.

■ Plaintiffs allege that the assessment of a net loan origination fee amounting to approximately 16% of the loan principal violates Section 4.1a of the GIS which provides in part:

Where there is a charge in addition to the stated rate of interest payable directly or indirectly by the borrower and imposed directly or indirectly by the lender as a consideration for the loan, or for or in connection with the loan of money, whether paid or payable by the borrower, the seller, or any other person on behalf of the borrower to the lender or to a third party, or for or in connection with the loan of money, other than as hereinabove in this Section provided, whether denominated "points," "service charge," "discount," "commission," or otherwise, and without regard to declining balances of principal which would result from any required or optional amortization of the principal of the loan, the rate of interest shall be calculated in the following manner:

The percentage of the principal amount of the loan represented by all of such charges shall first be computed, which in the case of a loan with an interest rate in excess of 8% per annum secured by residential real estate, other than loans described in paragraphs (e) and (f) of Section 4,[1] shall not exceed 3% of such principal amount. Said percentage shall then be divided by the number of years and fractions thereof of the period of the loan according to its stated maturity. The percentage thus obtained shall then be added to the percentage of the stated annual rate of interest. (Ill. Rev.Stat. (1985), ch. 17 ¶ 6406.)

The district court found that Section 4.1a of the GIS was preempted by Section 501 of DIDMCA (12 U.S.C. § 1735f–7 note) which provides in part:

(a)(1) The provisions of the constitution or the laws of any State expressly limiting the rate or amount of interest, discount points, finance charges, or other charges which may be charged, taken, received, or reserved shall not apply to any loan, mortgage, credit sale, or advance which is—

(A) secured by a first lien on residential real property, ...;

(B) made after March 31, 1980; and

(C) described in ... 12 U.S.C. § 1735f–5(b)[2] ...

Paragraph 3(c) of the Federal Home Loan Bank Board regulations promulgated pursuant to Section 501 of DIDMCA further defines the contours of the federal regulatory scheme providing:

Nothing in this section preempts limitation in state laws on prepayment charges, attorneys fees, late charges or other provisions designed to protect borrowers. (12 C.F.R. Sec. 590.3(c).)

The parties do not dispute the fact that Section 501 of DIDMCA applies to the plaintiffs' loan. Plaintiffs dispute whether the net loan origination fee charged by Diamond for extending the loan is in effect a "prepayment penalty," a proper subject of state regulation, rather than "points,"[3] which may not be regulated by the state as expressly stated in Section 501 of DIDMCA.

Plaintiffs assert that the net loan origination fee charged by Diamond is in effect a prepayment penalty which may be regulated by states. They contend that Section 4.1a, which limits charges on loans with an annual interest rate in excess of 8% to 3% of the loan principal, is a limitation on prepayment penalties, not points. Crucial to this argument is the proposition that points have the same economic effect of discouraging early payment and refinancing of a loan at a lower rate as do prepayment penalties. Plaintiffs reason that in order to refinance a loan the borrower must pay the entire amount of points assessed on the first loan rather than paying an amortized portion of the points reflecting the length of time the loan has been outstanding. As a result, the benefits of prepayment and refinancing when interest rates decline are often nullified by the payment of points on the first loan. Accordingly, these borrowers urge that Section 4.1a effectively regulates prepayment penalties and is not preempted by Section 501 of DIDMCA.

Such an argument ignores key distinguishing features of prepayment penalties not characteristic of points. Prepayment penalties are assessed at the time of early payment of the loan, rather than at the initiation of the original loan or as an addition to the loan principal as are points. Further, points must be paid regardless of whether the loan is prepaid, in contrast to the prepayment penalties.

Plaintiffs also cannot escape the clear distinction made by Congress between points and prepayment penalties in enact-

---

**1.** Paragraph 6404 of this chapter, *viz.*, ch. 17 of Ill.Rev.Stat. (1985).

**2.** Section 1735f–5(b) refers to loans in effect as of April 1, 1980, which are "federally related". The portion of Section 501 contained in (A)–(C) has not been codified, but may be found in a note to 12 U.S.C.A. § 1735f–7 (1980 and 1987 Supp.).

**3.** "Points" refers to various add-on charges assessed as a percentage of the loan principal by the lender as compensation for extending the loan.

ing DIDMCA. The language of Section 501 clearly refers to "discount points" which may not be regulated by states while the regulation contained in 12 C.F.R. § 590.3(c) specifically allows the regulation of "prepayment penalties" by the states. Similarly, the Senate Report on DIDMCA indicated Congress' intent to preempt only those limitations which are included in the calculation of the annual percentage rate, excluding from coverage state limitations on prepayment penalties, late charges or similar limitations (which are not included in the calculation of the annual percentage rate) designed to protect borrowers. S.Rep. No. 96–368, 96th Cong., 2d Sess. 19, *reprinted in* 1980 U.S.Code Cong. & Admin.News 236, 255. Section 4.1a includes points in the calculation of the annual percentage rate, clearly within the intended and explicit coverage of DIDMCA. It is also common practice under federal law to include points in the annual percentage rate. See, *e.g.,* 15 U.S.C. § 1605(a); 12 C.F.R. § 226.4.

Further, Congress provided that states may opt out of the coverage of the Act by enacting legislation within the 3 years between April 1, 1980 and April 1, 1983 indicating the state's intent to be excluded from the provisions of § 501(a)(1). Section 501(b)(2); 12 C.F.R. § 590.3(b). In order to be excluded from federal preemption of the regulation of points a state may adopt legislation limiting points at any time after March 31, 1980. Section 501(b)(4); 12 C.F.R. § 590.3(b)(3). There is no legislation passed after March 31, 1980, exempting Illinois from coverage of DIDMCA regarding points, nor any legislation within the 3–year period between 1980 and 1983 removing Illinois from the provisions of Section 501(a)(1).

■ Accordingly, Section 4.1a of the GIS is specifically preempted by Section 501 of DIDMCA. It is clear that Congress intended to distinguish between points which may not be limited by states and prepayment penalties which may be regulated by the states. The net loan origination fee charged by Diamond is clearly intended as compensation for making the loan rather than a prepayment fee, since it must be paid regardless of whether plaintiffs prepay the loan. The complaint based on a violation of Section 4.1a of the GIS was properly dismissed by the district court on the basis of federal preemption.

### B.

■ In dismissing this action, the bankruptcy court alternatively held that Section 4.1a had been implicitly repealed by the 1981 amendment of Section 4 of the GIS, Ill.Rev.Stat. ch. 17, ¶ 6404(1)(*l*), which removed all limits on interest rates, points and other consideration charged on residential real estate mortgages. The amendment provides in part:

(1) ... It is lawful to charge, contract for, and receive any rate or amount of interest or compensation with respect to the following transactions:

. . . . .

(*l*) Loans secured by a mortgage on real estate. (Ill.Rev.Stat. ch. 17, ¶ 6404.)

The amendment further provided that no penalty for prepayment may be charged on loans with an interest rate in excess of 8% per annum.

Plaintiffs contend that Section 4.1a may be read consistently with Section 4. Section 4, they assert, prohibits prepayment penalties on loans with interest in excess of 8% per annum while Section 4.1a limits the amount of add-on charges assessed on 8% loans. This argument cannot be reconciled with the clear language and purpose of Section 4 which allows lenders to charge any rate of interest and any other compensation for loans such as that of plaintiffs.

Courts strongly disfavor repeal by implication and will invoke this doctrine of statutory construction only where a statute enacted later in time is repugnant to an earlier statute such that the two acts cannot stand together. *U.S. v. Will,* 449 U.S. 200, 101 S.Ct. 471, 66 L.Ed.2d 392 (1980); *People v. Maslowsky,* 34 Ill.2d 456, 216 N.E.2d 669 (1966), *appeal dismissed,* 385 U.S. 11, 87 S.Ct. 94, 17 L.Ed.2d 11. On the other hand, both the language and purpose

of Section 4.1a are clearly contradictory to Section 4.

Section 4 of the GIS was comprehensively amended in 1981 to increase the availability of funds for home financing previously restricted by the statute's limits on interest rates and fees associated with real estate loans. (See Tr. of Ill. Senate Debates, 82d G.A., June 23, 1981). The deregulatory impetus of the 1981 amendments is inconsistent with the limitation on fees associated with real estate loans contained in Section 4.1a.

The language of the two provisions is also irreconcilable. The amendment to Section 4 removed the previous limits on interest rates and compensation for loans secured by a mortgage on real estate, while Section 4.1a limits the fees charged on a loan in excess of 8% per annum to 3% of the loan principal. Section 4.1a provides for the calculation of the effective interest rate of the loan by including the amount of points charged, reflecting the fact that points are a form of compensation to the lender in addition to the stated interest rate charged. If Section 4.1a is allowed to stand with the amended Section 4, Section 4.1a would impose a limit on the amount of points which lenders may charge on loans in excess of 8% per annum, while Section 4 enables lenders to charge any amount of compensation for such loans. Clearly, the failure to repeal Section 4.1a was an oversight of the legislators. Even if we accepted plainttiffs' argument that Section 4.1a is a limitation of prepayment penalties to 3% on loans charging in excess of 8% per annum rather than points, it would be superseded by Section 4 which makes any prepayment penalty unlawful for loans charging more than 8% per annum.

## IV

## CONCLUSION

The district and bankruptcy courts properly dismissed plaintiffs' action based on the preemption of Section 4.1a of the GIS by Section 501 of DIDMCA. Further, the bankruptcy court correctly found alternatively that Section 4.1a had been repealed by implication by Section 4 which removes most limitations on the compensation charged by lenders.

AFFIRMED.