Ronald Paul **BAUGHMAN**, individually and on behalf of all others similarly situated, Appellant,

v.

**MELLON MORTGAGE COMPANY,** Respondent.

Dennis Driggers, et al., Appellants,

v.

**FBS Mortgage Corporation,** Respondent.

Nos. C1–00–1016, CX–00–1340.

Court of Appeals of Minnesota.

Jan. 9, 2001.

---

Charles H. Johnson, Neal A. Eisenbraun, Charles H. Johnson & Associates, New Brighton, MN; and John M. Tancabel, Tancabel Law Offices, St. Paul, MN, (for appellants).

Alan H. Maclin, Brent R. Lindahl, Briggs & Morgan, P.A., St. Paul, MN, (for respondent Mellon).

Patrick J. McLaughlin, Julie A. Casserly, Dorsey & Whitney, L.L.P ., Minneapolis, MN, (for respondent FBS).

Considered and decided by HARTEN, Presiding Judge, KLAPHAKE, Judge, and ANDERSON, Judge.

## OPINION

HARTEN, Judge.

In this consolidation of two class actions, appellants, mortgagors, challenge the tax service fees imposed by respondents, mortgagees, as violative of Minn.Stat. § 47.20, subd. 9(g) (1998). Respondents

moved for dismissal of appellants' complaints on the ground that Minn.Stat. § 47.204, subd. 1 (1998) supersedes Minn. Stat. § 47.20, subd. 9(g). Because we see no error of law, we affirm.

## FACTS

Appellant Ronald Baughmann and appellant Dennis Driggers, both mortgagors, brought separate actions, on behalf of themselves individually and all others similarly situated, against their mortgagees, respectively, respondent Mellon Mortgage Company and respondent FBS Mortgage Company. Appellants alleged that the tax service fees charged by respondents violated Minn.Stat. § 47.20, subd. 9(g), and its predecessor. In each case, the district court dismissed the complaint on the ground that Minn.Stat. § 47.204, subd. 1, allows the tax service fees respondents charged appellants notwithstanding the disallowance of such tax service fees purportedly imposed by Minn.Stat. § 47.20, subd. 9(g).

Appellants challenge the dismissals; their appeals were consolidated.[1]

## ISSUE

Does Minn.Stat. § 47.204, subd. 1 (1998), exempt the fees respondents charged appellants from the limitations purportedly imposed by Minn.Stat. § 47.20, subd. 9(g) (1998)?

## ANALYSIS

■ Statutory construction is a question of law, which this court reviews de novo. *Brookfield Trade Ctr., Inc., v. County of Ramsey,* 584 N.W.2d 390, 393 (Minn.1998).

Minn.Stat. § 47.20, subd. 9(g) (1998), provides that:

The mortgagee shall not charge a direct fee for the administration of the escrow account, nor shall the mortgagee charge a fee or other consideration for allowing the mortgagor to discontinue the escrow account.

This statute was codified in 1996 to replace Minn.Stat. § 47.20, subd. 9(3), which was codified in 1975. Minn.Stat. § 47.20, subd. 9(3), read, "A mortgagee shall be prohibited from charging a direct fee for the administration of the escrow account." The 1996 change was limited to replacing "shall be prohibited from charging" with "shall not charge" and adding a second clause, which is not relevant here. Both versions of this statute protect the rights of mortgagors such as appellants and both preclude mortgagees such as respondents from charging a tax service fee. Thus, the 1996 amendment of Minn.Stat. § 47.20, subd. 9(3) made no significant changes pertinent to the narrow issue before us.

In 1980, Congress passed the Depository Institutions Deregulation and Monetary Control Act of 1980, 12 U.S.C. § 1735f–7a (the federal law). The federal law preempted statutes like Minn.Stat. § 47.20, subd. 9(3), by providing that any state statute "expressly limiting the rate or amount of interest, discount points, finance charges, or other charges" made by mortgagees did not apply to certain mortgages such as appellants'. The overall purpose of the federal law was to encourage bank financing.

In 1981, Minnesota exercised its right to "opt out" of the federal law, *see* Minn.Stat. § 47.203, but it also exercised its own right to preempt statutes like Minn.Stat. § 47.20, subd. 9(3), by passing Minn.Stat. § 47.204, subd. 1 (1998), which reads:

Notwithstanding any law to the contrary, no limitation on the rate or

**1.** The district court in *Driggers* also held that, although Driggers was a member of the class whose claims against FBS were settled by an agreement that resolved an earlier class action suit (*Miller individually and o/b/o all others similarly situated v. FBS* ) and the claims Driggers made were among the claims re-

leased by the *Miller* settlement, the *Miller* settlement did not bar Driggers' action because the Notice of Settlement was insufficient. FBS filed a Notice of Review of the district court's decision that Notice was insufficient. Because our decision renders that issue moot, we do not address it.

amount of interest, discount points, finance charges, or other charges shall apply to a * * * mortgage * * * which would have been exempt from the laws of this state pursuant to [the federal law] but for section 47.203 * * *.

■ Minn.Stat. § 47.20, subd. 9(3), and later Minn.Stat. § 47.20, subd. 9(g), are "limitation[s] on the rate or amount of * * * finance charges" within the meaning of Minn.Stat. § 47.204, subd. 1, because they forbid mortgagees to make those charges. The tax service fees here in question constituted "finance charges" under the federal law and its Minnesota correlative because they were included in the calculation of the annual percentage rate (APR) of the loan. The issue, then, is whether Minn.Stat. § 47.20, subd. 9(3), and later Minn.Stat. § 47.20, subd. 9(g), were in full force to disallow the charging of the tax service fees notwithstanding the federal law exempting such fees from limitation by state law.

■ Appellants contend that they were in full force and offer three grounds for this contention.[2]

■ First, appellants rely on the legislative history of the federal law. As a threshold matter, this reliance is misplaced because the language of the federal law is plain, and, as appellants acknowledge, broad. Recourse to the legislative history is therefore not only unnecessary; it is not even permitted. *See State by Beaulieu v. RSJ, Inc.*, 552 N.W.2d 695, 701 (Minn. 1996) (when legislative intent manifested by plain and unambiguous statutory language, statutory construction neither necessary nor permissible).

Appellants' reliance on the legislative history is also misplaced because they misread that history. They cite language from the Senate Report 96–368, 96 Cong., 2nd Sess., stating that Congress did "not intend to exempt limitation * * * designed to protect borrowers" and argue that because Minn.Stat. § 47.20, subd. 9(g), is a limitation designed to protect borrowers, Congress did not intend to exempt it. But appellants ignore the previous sentence, stating that Congress "intends to exempt only those limitations that are included in the [APR]." Respondents' tax service fees were included in the APR; exempting them from state regulation was the intent of the federal law.

Second, appellants quote the federal law reference to state laws "expressly limiting the rate or amount of interest, discount points, finance charges, or other charges" and argue that Minn.Stat. § 47.20, subd. 9(g), is not "an 'express' limitation on the interest rate." But the federal law refers to state laws that expressly limit the rate or amount of four entities: interest, discount points, finance charges, and other charges. The federal law is not confined to state laws that limit the interest rate.

■ Third, appellants contend that the "notwithstanding any law to the contrary" language in Minn.Stat. § 47.204, passed in 1981, cannot apply to Minn.Stat. § 47.20, subd. 9(g), passed in 1996. But when Minn.Stat. § 47.204 was passed, the predecessor of Minn.Stat. § 47.20, subd. 9(g), Minn.Stat. § 47.20, subd. 9(3), had been in effect for six years. And the provision of its successor statute, so far as it pertains to the issue before us, remained essentially the same. *See* Minn.Stat. § 47.20, subd. 9(g), replacing the phrase "shall be prohibited from charging" in Minn.Stat. § 47.20, subd. 9(3), with "shall not charge." The 1996 changes and additions made to Minn. Stat. § 47.20, subd. 9(3), by Minn.Stat.

**2.** Appellants also argue that holding that Minn.Stat. § 47.204 preempts the first clause of Minn.Stat. § 47.20, subd. 9(g), would mean holding that it also preempts the second clause of that subdivision as well as Minn. Stat. § 47.207. But neither the second clause of Minn.Stat. § 47.20, subd. 9(g), nor Minn.

Stat. § 47.207 meets the federal law criterion because neither is a state law "expressly limiting the rate or amount of interest, discount points, finance charges, or other charges * * *." Therefore, Minn.Stat. § 47.204 has no application to them.

§ 47.20, subd. 9(g), do not reach the superseding effect of Minn.Stat. § 47.204.

This court addressed similar arguments in *Fratzke v. Pung*, 378 N.W.2d 112 (Minn. App.1985), *review denied* (Minn. Jan. 31, 1986). Fratzke was sentenced under Minn.Stat. § 244.05, effective date May 1, 1980, under which he had to serve 17 years before being eligible for supervised release; he wanted to be sentenced under an earlier statute, Minn.Stat. § 243.05, under which he would have had to serve only 14 years before being eligible. He contended that drafters of Minn.Stat. § 244.05 "overlooked the provisions of § 243.05." *Id.* at 114. The court concluded that Fratzke's contention was unsupported. Fratzke also argued that Minn.Stat. § 243.05 applied to his case because it had been amended subsequent to the adoption of Minn.Stat. § 244.05. This argument also was rejected.

> The 1981 amendment essentially made minor stylistic changes. The 1983 amendment similarly made stylistic changes * * *. Neither of these amendments shows a legislative intent to implicitly repeal § 244.05.

*Id.* Similarly, the 1996 amendment of Minn.Stat. § 47.20, subd. 9(3), by Minn. Stat. § 47.20, subd. 9(g), shows no legislative intent to repeal Minn.Stat. § 47.204.

■ Moreover, we cannot read into Minn.Stat. § 47.20, subd. 9(g), the phrase, "Notwithstanding Minn.Stat. § 47.204 to the contrary" because we may not "supply [to a statute] that which the legislature purposefully omits or inadvertently overlooks." *Green Giant Co. v. Commissioner of Revenue*, 534 N.W.2d 710, 712 (Minn. 1995). Nor can we hold that the legislature in 1996 enacted a statute prohibiting mortgagees from making certain charges intending that statute to be in conflict with a 1981 statute prohibiting regulation of those charges "[n]otwithstanding any law to the contrary"; such a result would be absurd and we presume that the legislature did not intend an absurd result. *See* Minn.Stat. § 645.17 (1998).

## DECISION

Because Minn.Stat. § 47.204, subd. 1, supersedes Minn.Stat. § 47.20, subd. 9(g), respondents did not violate Minn.Stat. § 47.20, subd. 9(g), by charging appellants the tax service fees. The district courts correctly dismissed appellants' complaints.

**Affirmed.**

KLAPHAKE, Judge (concurring specially).

Although I agree with the result reached by the majority in this case, I disagree with its holding that Minn.Stat. § 47.204, subd. 1 (1998) supersedes Minn. Stat. § 47.20, subd. 9(g) (1998). I agree that the "tax service fees" charged in this case are "finance charges" and thus exempt from state regulations and allowed by Minn.Stat. § 47.204, subd. 1. I disagree that these types of "finances charges" can also be considered "direct fee[s] for the administration of [an] escrow account," so as to be prohibited under Minn.Stat. § 47.20, subd. 9(g). Because these two statutes govern different types of charges and do not conflict, Minn.Stat. § 47.204, subd. 1, should not be construed to supersede Minn.Stat. § 47.20, subd. 9(g).

Minn.Stat. § 47.204, subd. 1, temporarily preempts any state law limiting "the rate or amount of interest, discount points, finance charges, or other charges" imposed by lenders on mortgages. These charges are all related to the loan itself and are included in a borrower's annual percentage rate (APR). *See* 12 C.F.R. § 226.4(a) (2000) (defining "finance charge" as "cost of consumer credit as a dollar amount"); *Currie v. Diamond Mortgage Corp.*, 859 F.2d 1538, 1542 (7th Cir.1988) (federal law exemption applies to "those [state] limitations which are included in the [APR]").

The "tax service fees" at issue here were one-time charges assessed at settlement to offset the cost of services provided to the lender by a private company over the life of the loan. Although the exact nature of the services provided in this case is un-

clear, the record contains a September 16, 1986 opinion by a Maryland Assistant Attorney General to that state's bank commissioner, describing the services provided by "tax service fees" to include obtaining tax bills for each loan, correlation of tax bills with individual loan numbers and presentation to the lenders for payment, and verification of tax payments even if a loan is not subject to escrow requirements. The opinion letter further explains that these fees are charged on all first mortgage loans regardless of whether a loan requires an expense escrow account.

Thus, a tax service fee is a one-time fee levied at the beginning of a loan to minimize the administrative costs inherent in the annual coordination of real property tax levies and is assessed equally for escrow and non-escrow loans. Because these fees were included in the APR and were part of the cost of the loan, they are "finance charges" under Minn.Stat. § 47.204, subd. 1. As such, they are exempt from any limitation state law might attempt to impose. *Cf. Chaires v. Chevy Chase Bank,* 131 Md.App. 64, 748 A.2d 34, 46 (2000) (rejecting claim that settlement related fees, including tax service fee, were illegal under Maryland law and holding that federal law preempted state law in this area). I therefore agree that appellants' challenge to imposition of these tax service fees must fail under Minn.Stat. § 47.204, subd. 1.

This does not mean, however, that Minn. Stat. § 47.20, subd. 9(g), is superseded, allegedly because it directly conflicts with Minn.Stat. § 47.204, subd. 1. Minn.Stat. § 47.20, subd. 9(g), prohibits lenders from charging "a direct fee for the administration of [an] escrow account." Escrow accounts are often required by lenders and are used to accumulate funds for the payment of insurance, taxes, assessments, or other ongoing charges or expenses of this type. Unlike finance charges, escrow accounts are separate from ·the underlying loan and are not computed into the APR or subject to federal disclosure require-

ments. *See Umdenstock v. American Mortgage & Inv. Co.,* 495 F.2d 589, 591–92 (10th Cir.1974) (although federal law requires disclosure of finance charges and APR, escrows are specifically exempted from these requirements). Thus, fees imposed for the administration of an escrow account are not considered part of the cost of a loan.

Tax service fees are not ongoing, direct fees used to administer escrow accounts; rather, they are one-time fees in the nature of finance charges and are imposed on a loan even if it is not subject to escrow requirements. Because Minn.Stat. § 47.20, subd. 9(g), does not apply to tax service fees, this statute does not attempt to limit these fees and does not conflict with Minn. Stat. § 47.204, subd. 1.

Minnesota statutes must be interpreted to give effect to all provisions and avoid rendering any one statute meaningless. Minn.Stat. §§ 645.16, 645.17 (1998). My analysis of this case gives effect to both statutes and voids neither.

I therefore concur in the result, but would not render meaningless the Minnesota statutory provision prohibiting charges on the administration of escrow accounts. That statute, in my opinion, remains viable.