Docket No. 98379–Agenda 10–May 2005.

U.S. BANK NATIONAL ASSOCIATION 
et al
., Appellants, v. MICHAEL CLARK 
et al
., Appellees (The State of Illinois, Intervening Appellee).

Opinion filed September 22, 2005.

JUSTICE KILBRIDE delivered the opinion of the court:

In this appeal, we consider whether the 3% limitation on lender charges for mortgages with interest rates of more than 8% found in section 4.1a of the Illinois Interest Act (815 ILCS 205/4.1a (West 2002)) is enforceable or is preempted by a prohibition on such caps in the federal Depository Institutions Deregulation and Monetary Control Act of 1980 (12 U.S.C. §1735f–7a (2000)). In separate foreclosure actions brought by the plaintiff creditors, the defendant homeowners filed counterclaims and affirmative defenses that included allegations the creditors had violated the Illinois Interest Act (815 ILCS 205/0.01 
et seq.
 (West 2002)). The circuit court of Cook County dismissed the homeowners’ counterclaims and affirmative defenses, but the appellate court reversed and remanded the cause for further proceedings. This court allowed the creditors’ joint petition for leave to appeal. We now reverse the judgment of the appellate court.

I. BACKGROUND

In separate actions, the creditors filed for foreclosure against a number of homeowners who were behind in their home mortgage payments. The homeowners each filed counterclaims and affirmative defenses that included an allegation that the creditors had violated the Illinois Interest Act (Act) by imposing fees in excess of 3% on loans with interest rates of greater than 8% (815 ILCS 205/4.1a(f) (West 2002)). The circuit court of Cook County dismissed those counterclaims, ruling the Interest Act claims were preempted by the federal Depository Institutions Deregulation and Monetary Control Act of 1980 (DIDMCA) (12 U.S.C. §1735f–7a (2000)), and, in some cases, by the federal Alternative Mortgage Transaction Parity Act of 1982 (Parity Act) (12 U.S.C. §3803(c) (2000)). The cases were later consolidated, and the homeowners filed an interlocutory appeal.

The appellate court reversed and remanded, relying in part on its prior decision in 
Fidelity Financial Services, Inc. v. Hicks
, 214 Ill. App. 3d 398 (1991). 348 Ill. App. 3d 856. In 
Hicks
, the court considered the interaction between the Interest Act and DIDMCA and, specifically, whether section 4.1a of the Act is preempted by section 501 of DIDMCA. The 
Hicks
 court concluded the loan at issue did not fall within the scope of DIDMCA because the “loan was not a purchase-money mortgage” and it was not clear whether the trust deed underlying the loan constituted a “first lien.” 
Hicks
, 214 Ill. App. 3d at 406. In addition, the 
Hicks
 court held that the 3% limit in section 4.1a of the Act was not implicitly repealed when the legislature amended section 4, thus permitting any rate or amount of interest or compensation for loans secured by a real estate mortgage. 
Hicks
, 214 Ill. App. 3d at 404. The appellate court here declined to follow conflicting federal authority in 
Currie v. Diamond Mortgage Corp. of Illinois
, 859 F.2d 1538 (7th Cir. 1988), holding that section 501 of DIDMCA preempted section 4.1a. The appellate court reasoned that it was not bound to follow federal precedent, but it was obliged to give deferential weight to 
Hicks
. 348 Ill. App. 3d at 863-64.

In addition, the appellate court chose not to address the creditors’ argument that 
Hicks
 was wrongly decided, finding that dispositive changes had occurred since the issuance of that decision. 348 Ill. App. 3d at 864. The appellate court noted that after 
Hicks
 was decided in 1991, the legislature adopted Public Act 87–496 to amend section 4.1a of the Act. After factually distinguishing the contrary decisions in 
Village of Park Forest v. Wojciechowski
, 29 Ill. 2d 435, 438 (1963), and 
City of Chicago v. Gordon
, 146 Ill. App. 3d 898, 901 (1986), the court deemed 
Davis v. City of Chicago
, 59 Ill. 2d 439 (1974), instructive, although it was not directly on point. 348 Ill. App. 3d at 865-66. The appellate court noted that DIDMCA specifically allowed states to adopt subsequent limitations on discount points and overcome the preemption provision. In light of this “opt-out” provision, the court concluded the changes to section 4.1a, while not directly altering the relevant portion of the Interest Act, could be seen as an attempt to resolve the conflict between 
Currie
 and 
Hicks
. 348 Ill. App. 3d at 866-67. Thus, the court concluded the “reenactment” of section 4.1a satisfied the override provision in section 501(b)(4) of DIDMCA and the homeowners’ Interest Act claims were improperly dismissed as preempted by DIDMCA. 348 Ill. App. 3d at 870.

Finally, the appellate court rejected the creditors’ argument that provisions in the Parity Act governing “alternative mortgage transactions” preempted some of the homeowners’ claims, as well as another issue not before this court. 348 Ill. App. 3d at 873, 875. We granted the creditors leave to appeal (see 177 Ill. 2d R. 315(a)), and the State of Illinois intervened as an appellee (see 735 ILCS 5/2–408 (West 2004)). We also allowed several entities supporting either the creditors
(footnote: 1) or the homeowners
(footnote: 2) leave to file 
amicus curiae
 briefs. See 155 Ill. 2d R. 345.

II. ANALYSIS

A. DIDMCA

In 1980, Congress passed DIDMCA “to ease the severity of the mortgage credit crunches *** and to provide financial institutions, particularly those with large mortgage portfolios, with the ability to offer higher interest rates on savings deposits.” S. Rep. No. 96–368, at 18 (1979), 
reprinted in
 1980 U.S.C.C.A.N. 236, 254. As Congress observed,

“[i]n addition to the adverse effects of usury ceilings on credit availability, mortgage rate ceilings must be removed if savings and loan institutions *** are to begin to pay market rates of interest on savings deposits. Without enhancing the ability of institutions to achieve market rates on both sides of their balance sheets, the stability and continued viability of our nation’s financial system would not be assured. Thus, Federal preemption of State usury ceilings would not only promote national home financing objectives but would provide the resources with which savers could be paid more interest on their savings accounts.” S. Rep. No. 96–368, at 19 (1979), 
reprinted in
 1980 U.S.C.C.A.N. 236, 255.

With that underlying intent, Congress enacted section 501 of DIDMCA, stating:

“(a) Applicability to loan, mortgage, credit sale, or advance; applicability to deposit, account, or obligation

(1) The provisions of the constitution or the laws of any State expressly limiting the rate or amount of interest, discount points, finance charges, or other charges which may be charged, taken, received, or reserved shall not apply to any loan, mortgage, credit sale, or advance which is–

(A) secured by a first lien on residential real property, ***;

(B) made after March 31, 1980; and

(C) described in section 527(b) of the National Housing Act (12 U.S.C. 1735f–5(b)), ***

* * *

(b) Applicability to loan, mortgage, credit sale, or advance made in any State after April 1, 1980

***

(2) Except as provided in paragraph (3), the provisions of subsection (a)(1) of this section shall not apply to any loan, mortgage, credit sale, or advance made in any State after the date (on or after April 1, 1980, and before April 1, 1983) on which such State adopts a law or certifies that the voters of such State have voted in favor of any provision, constitutional or otherwise, which states explicitly and by its terms that such State does not want the provisions of subsection (a)(1) of this section to apply with respect to loans, mortgages, credit sales, and advances made in such State.

***

(4) At any time after March 31, 1980, any State may adopt a provision of law placing limitations on discount points or such other charges on any loan, mortgage, credit sale, or advance described in subsection (a)(1) of this section.” 12 U.S.C. §1735f–7a (2000).

Thus, the relevant portion of DIDMCA preempted every existing state limitation on “the rate or amount of interest, discount points, finance charges, or other charges” applicable to any loan or mortgage (hereinafter, mortgage) unless a state chose to override the preemption by one of the methods specified in subsections (b)(2) and (b)(4). 12 U.S.C. §§1735f–7a(b)(2), (b)(4).

To “opt-out” under subsection (b)(2), by April 1, 1993, a state was required to adopt a law, or to certify a vote favoring a provision, expressly stating its decision to opt-out. 12 U.S.C. §1735f–7a(b)(2) (2000). To opt-out under subsection (b)(4), a state could adopt a law after March 31, 1980, limiting the relevant points or charges on affected mortgages. 12 U.S.C. §1735f–7a(b)(4) (2000).

B. The Chronology

This appeal involves the interrelationship of a number of Illinois legislative and federal congressional provisions as they have changed since 1980. To provide a backdrop for our analysis, we present a brief chronology of the relevant provisions and changes.

1974
. The Illinois legislature enacts limitations on points and fees in section 4.1a of the Interest Act. Preexisting section 4 continues to impose interest rates limits.

1980
. Congress enacts DIDMCA, preempting statutory limits on lender fees, including those in section 4.1a.

1981
. The Illinois legislature amends section 4 of the Interest Act by removing all limitations on residential mortgage interest rates and lender compensation.

1992
. The Illinois legislature amends section 4.1a of the Interest Act to remove two fee categories from the types of charges governed in that section and in section 6 of the Interest Act.

The homeowners each entered into the mortgage transactions underlying this appeal after 1992. At the most basic level, the creditors claim that the homeowners’ Interest Act counterclaims and affirmative defenses were properly dismissed because they were preempted by section 501 of DIDMCA and because Illinois has not opted-out of preemption under either of the two methods specified in DIDMCA. The homeowners maintain that the appellate court properly reversed the dismissal order because the limitations on points and fees in section 4.1a are not preempted by section 501 of DIDMCA.

C. Implicit Repeal of Section 4.1a of the Interest Act

The creditors contend in part that Illinois’ preexisting limitation on points and charges in section 4.1a of the Act was implicitly repealed by legislative amendments to section 4 in 1981 and 1982. We note that this interlocutory appeal is from the appellate court’s reversal of the trial court’s dismissal of the homeowners’ affirmative defenses and counterclaims pursuant to section 2–615 and 2–619 of the Code of Civil Procedure (735 ILCS 5/2–615, 2–619 (West 2000)). The proper standard of review of the dismissal orders in this case is 
de novo
. 
Feltmeier v. Feltmeier
, 207 Ill. 2d 263, 266 (2003). We begin our analysis by examining both the language of section 4.1a and the evolution of the language currently found in section 4.

In relevant part, section 4.1a states:

“
Where there is a charge in addition to the stated rate of interest
 payable directly or indirectly by the borrower and imposed directly or indirectly by the lender as a consideration for the loan, or for or in connection with the loan of money,*** whether denominated ‘points,’ ‘service charge,’ ‘discount,’ ‘commission,’ or otherwise, *** the rate of interest shall be calculated in the following manner:

The percentage of the principal amount of the loan represented by all of such charges shall first be computed, which in the case of a loan with an interest rate in excess of 8% per annum secured by residential real estate, *** shall not exceed 3% of such principal amount
. Said percentage shall then be divided by the number of years and fractions thereof of the period of the loan according to its stated maturity. The percentage thus obtained shall then be added to the percentage of the stated annual rate of interest.” (Emphases added.) 815 ILCS 205/4.1a (West 2004).

Thus, on its face section 4.1a limits the designated charges (cumulatively, points or charges) to 3% for residential mortgage loans with annual interest rates exceeding 8%. 815 ILCS 205/4.1a (West 2004).

Until 1981, section 4 did not permit lenders “to charge, contract for, and receive any rate or amount of interest or compensation with respect to” mortgage loans. Ill. Rev. Stat. 1979, ch. 74, par. 4 (now 815 ILCS 205/4 (West 2004)). In 1981, the legislature added subparagraph (l) to section 4, making the existing language applicable to “
[l]oans secured by a mortgage on residential real estate
.” (Emphasis in original.) Pub. Act 82–660, eff. September 25, 1981 (amending Ill. Rev. Stat. 1979, ch. 74, par. 4). Section 4 was again amended in 1982, removing the word “residential” from subparagraph (l), thereby legalizing the receipt of any rate or amount of interest or compensation on 
any
 real estate mortgage. See Pub. Act 82–951, eff. August 19, 1982 (Ill. Rev. Stat. 1981, ch. 17, par. 6404 (moved from Ill. Rev. Stat. 1979, ch. 74, par. 4)). This portion of section 4 has not been changed since the 1982 amendment. See 815 ILCS 205/4(1)(l) (West 2004).

The creditors contend that by permitting any rate or amount of interest or compensation to be charged on any real estate mortgage, the legislature’s 1981 and 1982 amendments implicitly repealed section 4.1a’s 3% limitation on points chargeable in connection with mortgage loans bearing interest rates above 8%.

Repeal by implication is generally disfavored, and we will presume legislation was intended to be consistent with existing law. 
Lily Lake Road Defenders v. County of McHenry
, 156 Ill. 2d 1, 9 (1993). Therefore, this court will apply that principle only when a subsequent statute’s terms and operation cannot be reconciled with those of an earlier statute. When the two statutes cannot be harmonized, the subsequent statute will be deemed to have repealed the earlier by implication because we cannot presume the legislature intentionally enacted contradictory laws. 
Lily Lake
, 156 Ill. 2d at 9. Here, relying on the reasoning of the Seventh Circuit Court of Appeals in 
Currie v. Diamond Mortgage Corp. of Illinois
, 859 F.2d 1538 (7th Cir. 1988), the creditors assert the language in section 4.1a and amended section 4 is irreconcilable, and thus section 4.1a was implicitly repealed by the amendments to section 4.

In 
Currie
, the plaintiff homeowner claimed in the Bankruptcy Court for the Northern District of Illinois that the defendant creditor violated section 4.1a of the Act by imposing charges of approximately 16% of the principal of the loan on a home mortgage with a yearly interest rate of 15.5%. The bankruptcy court granted the creditor’s motion to dismiss for failure to state a claim, citing both the preemption of section 4.1a by section 501 of DIDMCA and the implicit repeal of section 4.1a by amendments to section 4 enacted in 1981. The district court affirmed solely on the basis of federal preemption. 
Currie
, 859 F.2d at 1539.

The court of appeals found that Illinois amended section 4 in 1981 to enhance the availability of money for home financing. The court determined that both this purpose and the plain language of that section, permitting lenders to impose any interest rate and other compensation, were in conflict with section 4.1a’s express ceiling on interest and points and could not be reconciled. 
Currie
, 859 F.2d at 1542-43. The court noted that the inclusion of points in the calculation of the effective interest rate under section 4.1a demonstrated that points are a type of compensation and thus could not be restricted under amended section 4. 
Currie
, 859 F.2d at 1543. After discussing the doctrine of repeal by implication and acknowledging that it is strongly disfavored, the court held that section 4.1a’s limitation on charges was repealed by implication by the amendment of section 4. 
Currie
, 859 F.2d at 1543. The court believed the legislature’s failure to repeal expressly section 4.1a must have been an oversight. 
Currie
, 859 F.2d at 1543.

The Seventh Circuit reaffirmed the 
Currie
 court’s finding of repeal by implication in 
Reiser v. Residential Funding Corp.
, 380 F.3d 1027, 1029 (7th Cir. 2004). In its analysis, the 
Reiser
 court refrained from conducting an in-depth reexamination of 
Currie
, believing “it is best to stick with one assessment until the state’s supreme court, which alone can 
end
 the guessing game, does so.” (Emphasis in original.) 
Reiser
, 380 F.3d at 1029. We are now availed of an opportunity to “end the guessing game” on the issue of implicit repeal.

For their part, the homeowners dismiss the 
Currie
 rationale as faulty, maintaining that the appellate court in 
Fidelity Financial Services, Inc. v. Hicks
, 214 Ill. App. 3d 398 (1991), correctly held that section 4.1a was not implicitly repealed. We note that while 
Hicks
 addressed the issue of repeal by implication, it did not consider the effect of DIDMCA on section 4.1a because it involved a second mortgage and thus was outside the scope of the federal statute.

The creditor in 
Hicks
 relied on the 
Currie
 decision. The 
Hicks
 court ultimately rejected 
Currie
 as federal 
dicta
 not binding on the courts of this state. 
Hicks
, 214 Ill. App. 3d at 401-02. Rather, the
 Hicks
 court “presume[d]” that section 4.1a was valid because it remained on the books 12 years after it was purportedly repealed. 
Hicks
, 214 Ill. App. 3d at 401-02. Notably, the court also believed section 4 could be reasonably reconciled with section 4.1a, precluding a finding of implicit repeal under our limited application of that doctrine. 
Hicks
, 214 Ill. App. 3d at 404. To reconcile the two provisions, the court read section 4, entitled “ ‘General Interest Rate’ ” as removing restrictions only on lenders’ ability to pass their actual cost of money along to borrowers. The court interpreted section 4.1a, addressing “ ‘charges for or in connection with the loan of money,’ ” as applying only to “ancillary charges not dictated by the cost of the commodity, but imposed by lenders
 in connection with
 loans.” (Emphasis in original.) 
Hicks
, 214 Ill. App. 3d at 403, quoting Ill. Rev. Stat. 1987, ch. 17, par. 6404. Thus, the court reasoned, the two statutes were not irreconcilable because they concerned different types of charges. 
Hicks
, 214 Ill. App. 3d at 403.

In construing a statute, the most fundamental rule is to give effect to the legislature’s intent, and the best evidence of that intent is the statutory language. That language must be given its plain and ordinary meaning. Courts may not properly construe a statute by altering its language in a way that constitutes a change in the plain meaning of the words actually adopted by the legislature. If the statutory language is clear, we must give effect to its plain and ordinary meaning without resorting to other construction aids. 
King v. First Capital Financial Services Corp
., 215 Ill. 2d 1, 26 (2005), quoting 
In re Marriage of Beyer
, 324 Ill. App. 3d 305, 310 (2001).

Here, the language of amended section 4 is clear and unambiguous: “It is lawful to charge, contract for, and receive any rate or amount of interest or compensation with respect to *** [l]oans secured by a mortgage on real estate.” 815 ILCS 205/4(1)(l) (West 2004). By refusing to restrict either the interest or “compensation” available to lenders “with respect to” mortgage loans, the legislature evinced its intent to permit a broad category of charges to be imposed in connection with secured real estate loans.

Similarly, on its face the plain language of section 4.1a limits to 3% a broad category of noninterest charges that may be imposed by lenders in conjunction with high interest rate mortgage loans. The restrictions apply to all charges imposed “as a consideration for the loan, or for or in connection with the loan of money.” 815 ILCS 205/4.1a (West 2004).

We can find no functional distinction between the noninterest “compensation” in section 4 and the noninterest “charges” in section 4.1a. The plain meaning of “compensation” includes: “payment for value received or service rendered: REMUNERATION.” Webster’s Third New International Dictionary 463 (1993). See also Black’s Law Dictionary 301 (8th ed. 2004) (defining “compensation” as “[r]emuneration and other benefits received in return for services rendered; esp., salary or wages”). The plain meaning of a “charge” is: “the price demanded for a thing or service.” Webster’s Third New International Dictionary 377 (1993). See also Black’s Law Dictionary 248 (8th ed. 2004) (defining a “charge” as the “[p]rice, cost, or expense”). The two terms appear to be the same type of payment viewed from different perspectives. “Compensation” represents the payee/lender’s perspective, while “charges” expresses the same money from the perspective of the payor/borrower. Thus, section 4 permits lenders to impose unlimited noninterest costs on all mortgage loans (815 ILCS 205/4(1)(l) (West 2004)), while section 4.1a restricts the same broad category of costs to 3% when the loan’s interest rate exceeds 8% (815 ILCS 205/4.1a (West 2004)). By the terms of their plain language, the two sections are irreconcilably inconsistent. 

The 
Hicks
 court’s interpretation of the two sections requires us to read unsupported limitations into the statutory language and is overruled. The plain words of the provisions do not restrict section 4 “compensation” to lenders’ actual cost of money or section 4.1a “charges” to “ancillary charges not dictated by the cost of the commodity,” as the 
Hicks
 court concluded. See 
Hicks
, 214 Ill. App. 3d at 403. The 
Hicks
 decision is also at odds with the legislature’s 1981 intention to amend section 4 to remove the artificial limits on the interest and other compensation lenders may receive for mortgage loans, thereby allowing market forces to prevail. See 82d Ill. Gen. Assem., House Proceedings, May 6, 1981, at 135-37 (statements of Representative McBroom); 82d Ill. Gen. Assem., Senate Proceedings, June 22, 1981, at 11-12 (statements of Senator Rock); 1981 Ill. Laws 3436, Governor’s Message, at 3436-37.

The homeowners, however, argue the 
Hicks
 decision is consistent with applying market forces to the mortgage market. They contend 
Hicks
’ interpretation of section 4 does not limit a lender’s overall 
revenue
 potential because even though section 4.1a limits noninterest charges to 3% on high interest loans, it does not regulate interest rates themselves, allowing lenders to obtain any desired overall rate of return. This argument is specious because it ignores a vital difference between mandatory charges that are payable at the beginning of a loan and interest that is payable only until the loan is paid off. Under section 4.1a, lenders are only guaranteed up-front charges of a maximum of 3%, and their receipt of an additional unregulated return from interest payments is dependent on conditions outside their control, 
i.e.
, the refinancing or early payment of the loan balance. For this reason, there is a significant practical difference between section 4’s bar on 
an
y lender interest and compensation restrictions and section 4.1a’s ceiling on up-front charges despite its allowance for unlimited interest. The two sections represent vastly differing approaches to regulating lender revenue and are inherently inconsistent. Thus, we agree with the Seventh Circuit Court of Appeals in 
Currie
 and 
Reiser
 that the 1981 amendments to section 4 implicitly repealed section 4.1a’s limitation on noninterest charges lenders may impose on residential mortgage loans.

Nonetheless, the homeowners claim that our legislature recently affirmed the continuing viability of section 4.1a by passing the High Risk Home Loan Act, effective January 1, 2004 (Loan Act) (815 ILCS 137/1 
et seq
. (West 2004)). This act defines mortgage loans as high risk if their annual percentage rates or loan fees exceed certain triggers. If a loan is deemed high risk, financed fees are capped at 6%. 815 ILCS 137/55 (West 2004). The Loan Act also contains an Interest Act “savings clause”: “To the extent this Act conflicts with any other Illinois State financial regulation laws,
 except the Interest Act
, this Act is superior and supersedes those laws for the purposes of regulating high risk home loans in Illinois.” (Emphasis added.) 815 ILCS 137/170 (West 2004). We are not persuaded by this argument.

Both the Interest and the Loan Act concern other aspects of the home mortgage market, and the savings clause applies broadly to all provisions of the Loan Act, whether they concern fee caps or not. The homeowners cite no evidence that the savings clause was specifically intended to permit the Interest Act’s ceiling on charges for high interest loans to continue in effect. Indeed, if that portion of the Interest Act is implicitly repealed, there is no conflict with any Loan Act provision, and that act will apply to all home loans falling within its scope. In short, the adoption of the Loan Act does not demonstrate the continued viability of the Interest Act provision at issue here as the homeowners’ claim. Thus, we hold the portion of section 4.1a of the Interest Act restricting applicable charges to 3% when the mortgage loan rate exceeded 8% was implicitly repealed by the amendment of section 4 in 1981.

D. Applicability of DIDMCA Preemption

The intervenor State of Illinois argues the creditors did not meet their burden of overcoming the presumption against preemption in this case by establishing that the term “first lien” as used in section 501 of the Act includes refinancing mortgages as well as purchase-money mortgages. The State initially contends that when DIDMCA was enacted in 1980, “a ‘first mortgage’ generally was viewed as one obtained to purchase a home, while a mortgage for which accumulated equity served as security (a so-called ‘home equity loan’) was called a ‘second mortgage,’ 
regardless
 of priority of position.” (Emphasis in original.) A cursory review of the authority cited for this proposition reveals the error in the State’s argument. In its citation, the State notes parenthetically that the cited article declares: “ ‘[t]raditional home equity loans are sometimes called second mortgages, although 
legally they may involve a first lien
.’ ” (Emphasis added.) See G. Canner, C. Luckett & T. Durkin, 
Home Equity Lending
, 75 Fed. Res. Bull. 333, 344 n.2 (May 1989). Thus, the cited article expressly recognizes that refinanced mortgage loans may constitute “first liens,” the term used to define loans and mortgages that fall within the scope of section 501 of DIDMCA. See 12 U.S.C. §1735f–7a(1)(A) (2000) (stating “(1) The provisions of the constitution or the laws of any State expressly limiting the rate or amount of interest, discount points, finance charges, or other charges which may be charged, taken, received, or reserved shall not apply to any loan, mortgage, credit sale, or advance which is–(A) secured by a 
first lien
 on residential real property” (emphasis added)).

Next, the State cites the Michigan Court of Appeals’ decision in 
Mitchell v. Trustees of United States Mutual Real Estate Investment Trust
, 144 Mich. App. 302, 375 N.W.2d 424 (1985), in support of its contention that the inclusion in section 501 of refinanced mortgage loans as “first liens” does not further Congress’ intent to promote home purchases. In its brief, the State asserts that “one of Congress’ purposes in enacting DIDMCA” recognized by the 
Mitchell
 court was stimulation of the home-buying market. While that is true, Congress also expressed another purpose: “to provide financial institutions, particularly those with large mortgage portfolios, with the ability to offer higher interest rates on savings deposits.” S. Rep. No. 96–368, at 18 (1979), 
reprinted in
 1980 U.S.C.C.A.N. 236, 254. This purpose is consistent with the incorporation of refinancing mortgage loans in the ambit of section 501. We reject the State’s argument to the contrary as unsupported. Under the plain meaning of the term “first lien,” both purchase-money and refinancing mortgages meeting the statutory requirements are covered by section 501. See Black’s Law Dictionary 942 (8th ed. 2004) (defining “first lien” as “[a] lien that takes priority over all other charges or encumbrances on the same property and that must be satisfied before other charges may share in proceeds from the property’s sale”). The great weight of federal authority also coincides with this view. See 
Brown v. Investors Mortgage Co.
, 121 F.3d 472, 475 (9th Cir. 1997) (stating the statutory language that “state usury restrictions, ‘shall not apply to 
any
 loan *** secured by a first lien.’ ” (emphasis in original), quoting 12 U.S.C. §1735f–7a(a)(1) (1994)); 
Gora v. Banc One Financial Services Inc.
, No. 95 C 2542 (N.D. Ill. October 17, 1995) (mem. op.) (finding section 501 applies to nonpurchase money loans); 
In re L.G.H. Enterprises, Inc.
 146 B.R. 612 (Bankr. E.D.N.Y. 1992) (holding section 501 applies to both purchase money and refinancing mortgages); 
Smith v. Fidelity Consumer Discount Co.
, 898 F.2d 907, 911-13 (3d Cir. 1989), 
aff’d in part, rev’d in part on other grounds
, 898 F.2d 896 (3d Cir. 1989) (concluding that DIDMCA applies to all first mortgages, not just purchase money mortgages); 
In re Lawson Square, Inc.
, 61 B.R. 145 (Bankr. W.D. Ark. 1986) (rejecting the argument that section 501 did not apply to nonpurchase money loans). As we have explained, “[i]n construing *** Federal statutes, we must look to the Federal decisions for its interpretation.”
 Boyer v. Atchinson, Topeka & Santa Fe Ry. Co.
, 38 Ill. 2d 31, 34 (1967). Therefore, based on our own interpretation of the relevant statutory language as well as by the weight of guiding federal authority, we conclude section 501 covers the nonpurchase money first lien mortgages at issue in this appeal.

E. Effect of the 1992 Amendment to Section 4.1a

Having determined that section 4.1a of the Interest Act has been preempted by section 501 of DIDMCA, we turn to the question of whether Illinois has “opted out” of section 501 as permitted in DIDMCA. When DIDMCA was enacted, it contained two distinct “opt-out” provisions permitting states to avoid its preemptive effect. In the first provision, Congress stated that section 501 “shall not apply to any loan, mortgage, credit sale, or advance made in any State after the date (on or after April 1, 1980, and before April 1, 1983) on which such State adopts a law or certifies that the voters of such State have voted in favor of any provision, constitutional or otherwise, which states explicitly and by its terms that such State does not want the provisions of” that section to apply. See 12 U.S.C. §1735f–7a(b)(2) (2000). It is undisputed here that Illinois did not opt-out of DIDMCA preemption pursuant to this provision.

In the second method, “[a]t any time after March 31, 1980, any State may adopt a provision of law placing limitations on discount points or such other charges on any loan, mortgage, credit sale, or advance described in”section 501. See 12 U.S.C. §1735f–7a(b)(4) (2000). The appellate court agreed with the argument of the homeowners and the intervenor that our legislature used this method to opt-out of DIDMCA preemption by amending section 4.1a in Public Act 87–496 in 1992.

The creditors claim that this amendment does not comport with subsection (b)(4)’s requirement that new legislation be adopted placing limits on the interest or points imposed on mortgages for two reasons. First, the creditors argue that since Illinois enacted the section 4.1a limitation in 1974, the 1992 amendment could not be considered 
new
 opt-out legislation. Second, they assert that the amendment did not limit points as required in subsection (b)(4) because it amended a portion of section 4.1a that is unrelated to limitations on points and fees limitations.

Conversely, the homeowners maintain that if the relevant portion of section 4.1a was implicitly repealed in 1981, then the amendment of that section in 1992 constituted its “readoption” and demonstrated the legislature’s intent to revive the preempted interest and points limitation.

The 1992 amendments added two subparts to section 4.1a. See Pub. Act 87–496, eff. January 1, 1992 (amending Ill. Rev. Stat. 1989, ch. 17, par. 6406). Subparts (e) and (f) allow lenders to charge fees for dishonored checks and late payments, respectively. The preexisting portion of section 4.1a stated that the enumerated fees “shall not be deemed to be *** charges by the lender as a consideration for the loan referred to in this Section.” 815 ILCS 205/4.1a (West 2004).

Our Statute on Statutes provides that “[t]he provisions of any statute, so far as they are the same as those of any prior statute, shall be construed as a continuation of such prior provisions, and not as a new enactment.” 5 ILCS 70/2 (West 2004). While this general rule is not limited to cases of implicit repeal, it is relevant to our analysis in that context. Specifically addressing the requirements for reenacting an implicitly repealed statute, this court explained in 
Lily Lake Road Defenders v. County of McHenry
, 156 Ill. 2d 1, 8 (1993), that the legislature “must 
expressly reenact
 a statute which has been repealed by implication to render it valid and enforceable again.” (Emphasis added.)

Here, the portion of section 4.1a expressly limiting lender charges to 3% on high interest rate loans was not changed by the 1991 amendment. The text of Public Act 87–496 clearly designates the amendment as consisting of the addition of subparts (e) and (f), highlighting those provisions while merely reprinting, unchanged, the remaining, preexisting text. See Pub. Act 87–496, eff. January 1, 1992 (amending Ill. Rev. Stat. 1989, ch. 17, par. 6406). Nothing in the text or structure of the amendatory act reveals any legislative “express” intent to “reenact” the ceiling on lender charges in section 4.1a. Indeed, our Statute on Statutes specifically precludes that conclusion. See 5 ILCS 70/2 (West 2004); 
Lily Lake
, 156 Ill. 2d at 7.

The homeowners’ also premise their argument in part on the inference that the legislature knowingly attempted to overcome the implicit repeal of section 4.1a’s limitation provision by adopting the 1992 amendment. Indeed, the decision in 
Currie v. Diamond Mortgage Corp. of Illinois
, 859 F.2d 1538 (7th Cir. 1988), holding that the charge limitation had been implicitly repealed, preceded the 1992 amendment, and some regulatory agencies had adopted the 
Currie
 holding. The homeowners assert that the legislature enacted the 1992 amendment to resolve the conflict between the decisions in 
Hicks
 and 
Currie
 by opting out of DIDMCA. Both they and the appellate court seek support for this position from 
Davis v. City of Chicago
, 59 Ill. 2d 439 (1974). See 348 Ill. App. 3d at 865-66.

In 
Davis
, the supreme court deviated from the general rule that language remaining unchanged from the prior version of the statute is construed as a continuation of the previous provision, not as a new enactment. The 
Davis
 court recognized that it was faced with “an unusual situation involving a statute that may have been subject to successful constitutional challenge under the former constitution but has now been reenacted under the 1970 Constitution in which the provisions of the 1870 Constitution giving rise to the challenge do not appear.” 
Davis
, 59 Ill. 2d at 444. The court also noted two appellate court cases had previously “raised questions as to the validity of [the relevant] section *** with differing results.” 
Davis
, 59 Ill. 2d at 444. Under those narrow circumstances, the court believed it could be “fairly said that the intent of the legislature, and its principal purpose, in reenacting [the relevant] section *** with only a minor change was to dispel the questions as to its validity.” 
Davis
, 59 Ill. 2d at 444.

Here, the appellate court asserted that the same reasoning was relevant because “the reenactment of section 4.1a may fairly be said to show a legislative intent to dispel the questions raised by the tensions between 
Currie
 and 
Hicks
.” 348 Ill. App. 3d at 867. We disagree. The type of unique circumstances underlying the 
Davis
 decision do not exist here. The legislative history does not support that position because 
Hicks
 was decided after the amendatory legislation was introduced in the General Assembly.

More importantly, as the appellate court recognized, the relevant portion of section 501 did not change here, while in 
Davis
, the critical language of the state constitution did change. See 348 Ill. App. 3d at 867. Thus, the legislature here had no compelling need to overcome a finding of implicit repeal comparable to the legislature’s need in 
Davis
 to account for the revisions in the state constitution. No definitive resolution of the implicit repeal issue existed when the 1992 amendment was enacted because this court had not yet considered that question. As the Seventh Circuit Court of Appeals acknowledged, federal opinions represent mere “educated guess[es]” as to this court’s ultimate ruling. See 
Reiser v. Residential Funding Corp.
, 380 F.3d 1027, 1029 (7th Cir. 2004) (recognizing that only the Illinois supreme court could finally resolve the issue of implicit repeal, explaining “[t]he state must resolve this conflict internally”). Thus, the legislature would have no critical impetus to counter a holding that section 4.1a’s charge limitation was implicitly repealed when that was not the law of this state at the time of the amendment. Moreover, the legislative history is wholly devoid of any discussion of 
Currie
, 
Hicks
, or any other ruling or opinion considering the issue of implicit repeal. Indeed, there is no reference to section 501, DIDMCA, or the 3% charge ceiling on high interest loans in any of the relevant legislative history. In the absence of any indication in either the language of the statute or its legislative history, we cannot conclude that by its 1992 amendment the legislature “expressly reenact[ed] a statute which has been repealed by implication,” thus rendering the charge limitation in section 4.1a enforceable and valid again. See 
Lily Lake
, 156 Ill. 2d at 7.

F. Other Issues

The creditors raise the issue of the Act’s “safe harbor” provisions, but due to our holding that section 501 of DIDMCA preempts section 4.1a’s limitation on charges, we need not consider that issue. In addition, the homeowners and intervening State assert that the creditors have forfeited any argument concerning the appellate court’s reversal of the trial court finding that the Alternative Mortgage Transaction Parity Act (Parity Act) preempted section 4.1a of the Interest Act. We agree and need not address the matter further.

III. CONCLUSION

For the reasons stated, we hold that section 4.1a’s limitation on lender charges was implicitly repealed by the legislature’s 1981 amendment of section 4 and that neither of the opt-out provisions in DIDMCA have been applied by our legislature. The legislature’s 1992 amendment to a different portion of section 4 did not constitute an opt-out under subsection (b)(4) of DIDMCA because that amendment alone was insufficient under state law to revive the statutory limitations provision. Therefore, federal preemption by section 501 of DIDMCA has not been overcome. Thus, the appellate court improperly reinstated the homeowners’ Interest Act counterclaims and affirmative defenses. Accordingly, we reverse the judgment of the appellate court on that issue.

Appellate court judgment reversed.

FOOTNOTES
1:     
1
The American Financial Services Association and the Consumer Mortgage Coalition jointly submitted a brief in support of the creditors, as did the Illinois Mortgage Bankers Association and the Illinois Association of Mortgage Brokers.

2:     
2
The Woodstock Institute, the National Training and Information Center, the Neighborhood Housing Services of Chicago, the South Austin Coalition, the South Suburban Housing Center, and the Central Illinois Organizing Project jointly submitted a brief in support of the homeowners.