NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 14, 2007[*]
Decided January 10, 2008

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

No. 06-2187

| | |
|---|---|
| DORRELL A. MCKEE-BEY, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Southern District of Illinois |
| *v.* | No. 02-1093-CJP |
| CRAIG MITCHELL and RICK REED, *Defendants-Appellees.* | Clifford J. Proud, *Magistrate Judge.* |

**O R D E R**

Illinois inmate Dorrell McKee-Bey claimed in this lawsuit under 42 U.S.C. § 1983 that correctional officer Craig Mitchell and medical technician Rick Reed violated his Eight Amendment rights by deliberately ignoring his medical needs. After a bench trial, a magistrate judge presiding by consent found for the defendants. McKee-Bey appeals, and we affirm.

At trial McKee-Bey offered the following version of events. In September 2000 he was treated at the Menard Correctional Center infirmary for orchitis, an

---

[*]After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. FED. R. APP. P. 34(a)(2).

inflammation of the testes. *See* STEDMAN'S MEDICAL DICTIONARY, 1377 (28th ed. 2006). McKee-Bey testified that a couple of days after his release from the infirmary he encountered Mitchell, who mocked his condition and warned that he knew McKee-Bey had assaulted a guard at another prison. Then on October 12, 2000, McKee-Bey noticed that his scrotum had begun to swell, peel, and change color. He requested medical attention from the infirmary staff but received no response. Another inmate testified that around October 15 he notified Mitchell, a lieutenant, that McKee-Bey needed medical attention. Mitchell responded that he was aware of the situation and that McKee-Bey should "stop crying like a little bitch."

On October 17, according to McKee-Bey, a medical technician examined him and promised that he would receive emergency treatment that evening. He did not. The next morning McKee-Bey walked with a group of inmates and guards from his cell house to the commissary, a distance he described as "quite a walk." McKee-Bey testified that he saw Mitchell and spoke with him for the first time about his apparent relapse. He told Mitchell that he was bleeding and in extreme pain, and that he needed the emergency medical attention he was promised the previous evening. It is unclear from McKee-Bey's testimony whether he tried to show Mitchell the problem. Mitchell purportedly told McKee-Bey to put in another request with the medical staff and threatened to send him to segregation if he did not return to his line. At the time, McKee-Bey maintained, his pants were "soaked in blood."

That same morning, McKee-Bey continued, he approached Reed, the medical technician who treated his condition in September, and informed Reed that blood and pus were "gushing" from his scrotum. Reed replied that he was busy and would get back to him, but he never did. That evening McKee-Bey complained to another guard about his symptoms. That guard testified that he and another medical technician escorted McKee-Bey to the infirmary, where he was diagnosed with a scrotal abscess and treated with an antibiotic, warm compresses, and pain medication. Although McKee-Bey experienced no further pain after that day, he testified that he ultimately lost his left testicle; he assumes that it atrophied, but he offered no corroborating medical evidence.

Mitchell, in contrast, testified that he never threatened McKee-Bey and was unaware of his condition before their October 18 conversation, the details of which he did not remember. Mitchell did not recall seeing blood on McKee-Bey's pants, and he denied looking at McKee-Bey's scrotum. He said that seeing blood would have prompted him to send McKee-Bey to the infirmary immediately, but otherwise he would have told McKee-Bey to follow the normal procedure for contacting the medical staff. Mitchell added that he would have concluded that the condition was not serious if McKee-Bey disclosed that a medical technician examined him the

night before without transferring him to the infirmary.  Mitchell noted that prisoners with medical complaints are free to approach the medical technicians who frequently circulate throughout the cell house.  He also mentioned that prison guards receive only limited medical training.

Reed, for his part, testified that he did not ignore McKee-Bey's complaints.  Rather, he concluded that there was no emergency.  When McKee-Bey approached him, he said, there was no evidence of blood on his clothes.  Moreover, because McKee-Bey approached Reed from the commissary, Reed concluded that McKee-Bey must have waited in line for around an hour after walking between 250 to 300 yards from the cell house to the commissary.  Reed did not ask McKee-Bey to remove his clothes.  Instead, after their conversation Reed told McKee-Bey he would check back with him.  Reed examined McKee-Bey's medical records and confirmed that McKee-Bey had not requested medical attention from Reed after the new symptoms appeared on October 12.  Reed also noted that the medical technician who examined McKee-Bey the previous evening had referred him for examination by a physician.  Had Reed seen blood on McKee-Bey's clothes, he said, he would have gotten him emergency care.

In finding for the defendants, the magistrate judge discredited McKee-Bey's contention that he was bleeding profusely during the walk from the cell house to the commissary, particularly since he introduced no evidence that anyone else had noticed his condition.  The magistrate judge also believed Mitchell and Reed when they said they would have secured immediate medical attention had they observed McKee-Bey bleeding through his pants.  Accordingly, the court reasoned that Mitchell's and Reed's actions did not constitute deliberate indifference because neither was aware of a medical emergency and both determined that McKee-Bey was receiving medical treatment for his condition.

On appeal, McKee-Bey argues that the magistrate judge erroneously excused the failures of Mitchell and Reed to procure emergency medical attention for his condition.  He contends that both knew he was receiving inadequate medical attention because, he says, he described his condition to them in detail on October 18 and informed each that he was supposed to have received emergency care the previous night.  We review the magistrate judge's conclusions of law *de novo* and his findings of fact for clear error.  *River E. Plaza, L.L.C. v. Variable Annuity Life Ins. Co.*, 498 F.3d 718, 720 (7th Cir. 2007).  And we rarely overturn a trial court's credibility determinations, *Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 448 (7th Cir. 2006), because the judge observed the witnesses' demeanor and appearance on the stand, *Mlsna v. Unitel Commc'ns, Inc.*, 91 F.3d 876, 880 (7th Cir. 1996).

Prison officials violate the Eighth Amendment if they deliberately ignore an inmate's serious medical needs.  *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir.

2006); *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006). Mitchell and Reed do not dispute that orchitis is a serious medical condition, but to prevail McKee-Bey had to prove that the defendants were aware of his condition and yet consciously disregarded it. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Doughty*, 433 F.3d at 1010. A prison employee who, like Mitchell, is not a medical professional generally fulfills his responsibilities as long as he investigates to ensure that the "medical staff was monitoring and addressing the problem." *See Doughty*, 433 F.3d at 1010-12 & 1010 n.9; *see also Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005). A medical professional, meanwhile, must take seriously a prisoner's complaints, though he may reasonably rely on the judgment of another medical professional who already has treated the prisoner for his condition. *Snyder*, 444 F.3d at 585-86; *Doughty*, 433 F.3d at 1013-15.

McKee-Bey was treated a few hours later on the very same day he complained to Mitchell and Reed. Regardless, we have no basis to disregard the magistrate judge's decision to credit Mitchell and Reed when they testified that they saw no blood and perceived no emergency. When McKee-Bey complained to Mitchell, he also said that a medical technician had seen him the previous evening, and given the absence of objective indicators that the care McKee-Bey was receiving was inadequate, Mitchell did not act unreasonably in telling McKee-Bey to continue seeking care through normal channels. Reed, too, acted reasonably. He reviewed McKee-Bey's medical records after speaking with him on the morning of October 18, and during that review he learned that another medical technician already had examined McKee-Bey the night before and referred him to a doctor. In the absence of evidence of an emergency, Reed's decision not to immediately transfer McKee-Bey to the infirmary satisfied the minimal expectations of his profession and the minimum standards of medical care to which McKee-Bey was entitled. *See Doughty*, 433 F.3d at 1013; *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

AFFIRMED.